[No. 4895-1-III. Division Three. February 17, 1983.]

JEAN L. RYAN, *Individually and as Executrix, Appellant,* v. RICHARD D. ZORNES, ET AL, *Respondents.*

*Nels A. Hansen* and *Collins & Hansen,* for appellant.

*David Sonn, Douglas Takasugi, Jeffers, Danielson, Sonn & Aylward,* and *Paul A. Klasen, Jr., Prosecuting Attorney,*

for respondents.

GREEN, J.—Eugene E. Ryan died October 13, 1978, at his home in Grant County. This action was commenced by his wife, Jean L. Ryan, on her own behalf and as executrix of her husband's estate, against Richard D. Zornes, the county coroner, and Grant County for damages. It is alleged that Mr. Zornes negligently issued a death certificate showing "coronary occlusion" as the cause of death, when in fact he had failed to determine the true cause of Mr. Ryan's death. Mr. Zornes and the County deny these allegations and affirmatively plead estoppel alleging that Mrs. Ryan failed to notify any official of Grant County prior to February 1979 of her desire to have an autopsy performed. Mr. Zornes and the County moved for summary judgment which was granted. Mrs. Ryan, in her dual capacity, appeals.

A summary judgment may be granted if the pleadings, affidavits, depositions and admissions properly before the court fail to show there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Affidavits and other testimonial documents of the moving party should be scrutinized with care and all reasonable inferences from the evidence be resolved against him, while the affidavit of the nonmoving party should be afforded leniency. *State ex rel. Murray v. Shanks*, 27 Wn. App. 363, 618 P.2d 102, *review denied*, 94 Wn.2d 1025 (1980).

Mr. Zornes, who is not a physician, in his affidavit supporting the motion for summary judgment, stated that, "After his death, Dr. Wayne Piper, the deceased's physician, requested my office to perform a postmortem. No one else requested that my office perform a postmortem on Mr. Ryan." He stated that on the day after the death, his office advised immediate relatives of his conclusion the cause of death was a heart condition. The affidavit states none of the deceased's family requested a postmortem or indicated any dissatisfaction with the coroner's conclusion until this

action was commenced.

In opposition to the motion for summary judgment, the affidavits of Dr. Piper, Jean Ryan and Nels Hansen were filed. Dr. Piper stated he was a physician and that Mr. Ryan was under his care at the time of Mr. Ryan's death. He then stated:

On the evening of Mr. Ryan's death, Mr. Ryan's widow called me and I went to her home where Mr. Ryan's remains lay. Upon examining the body, and in light of my knowledge of Mr. Ryan's physical health at the time of his death, I concluded that the true cause of Mr. Ryan's death could not be ascertained with certainty without an autopsy. After explaining my conclusions to Mrs. Ryan, *Mrs. Ryan agreed that an autopsy should be performed and authorized me to instruct the coroner to perform an autopsy.*

*I requested,* per Mrs. Ryan's instructions, Mr. William Warner, *Deputy Coroner, to do an autopsy* or postmortem to determine the cause of death, *stating* to him at that time that *Mrs. Ryan had authorized and agreed to an autopsy.* Neither Mr. Warner nor any other officer of the Coroner's office at that time or at any time thereafter advised me that such an autopsy would not be performed.

Although I had told Mr. Warner that I would not be able to sign the Death Certificate because of significant questions in mind concerning the cause of Mr. Ryan's death, such questions given rise by Mr. Ryan's past medical history and circumstances of his death, no member of the Coroner's office at that time or subsequently contacted me concerning my opinion of the cause of Mr. Ryan's death or concerning Mr. Ryan's past history.

(Italics ours.)

Jean Ryan in her affidavit stated: During July 1978, Mr. Ryan was injured in an industrial accident and was thereafter under the care of Dr. Piper, their family physician of many years. Mr. Ryan was examined at various clinics and numerous tests indicated his heart was sound. On October 13, 1978, about 4:30 in the afternoon her husband died. Dr. Piper came to the house and was there when the ambulance attendants arrived. She heard Dr. Piper advise Mr. Warner,

the deputy coroner, and the ambulance attendants that an autopsy would be necessary to determine the cause of death. Dr. Piper did not think Mr. Ryan had died from a heart attack, but suspected that the death might be related to the industrial injury. Dr. Piper ordered an autopsy and she expected that one would be performed, and as far as she knew it had been done prior to the funeral. She did not learn that the autopsy had not been performed until she received a copy of the death certificate which was dated October 31, 1978. Finally, the lack of an autopsy deprived her of the opportunity to claim accidental death benefits on her husband's insurance policy and to recover benefits under the Department of Labor and Industries insurance program.

Without objection, the affidavit of Nels Hansen, one of the attorneys for Mrs. Ryan, was considered. It stated that he discussed this matter with the Ryans' two sons who were at the funeral home to make funeral arrangements. They indicated Mr. Warner said there was a question about whether an autopsy would be performed, and they told him that whatever Dr. Piper directed be done should be done.

These affidavits raise questions of material fact. For example: Was Dr. Piper authorized by Mrs. Ryan to request the autopsy? Did Mr. Zornes agree to perform the autopsy? What were the conversations, if any, between the coroner's office and the family subsequent to the death? Why didn't the coroner advise Dr. Piper that an autopsy would not be performed so that Dr. Piper could have obtained one? In view of all the circumstances, did the coroner assume the obligation of performing an autopsy and did Mrs. Ryan have a right to rely upon the performance of that obligation?

Mr. Zornes takes the position that his duties are defined by statute and that he not only had no duty to perform the autopsy, but was in fact without statutory authority to do so. RCW 68.08.100; RCW 68.08.010. We disagree.

RCW 68.08.010 provides:

The jurisdiction of bodies of all deceased persons . . . where death results from unknown or obscure causes, or where death occurs within one year following an accident . . . is hereby vested in the county coroner . . .

An autopsy may be performed in any case in which the deceased's spouse authorizes the autopsy to be performed. RCW 68.08.101. Here, Mrs. Ryan stated her husband was injured in an industrial accident in July and died in October 1978, within 1 year following the accident. Therefore, the death was within the coroner's jurisdiction. The affidavits construed in favor of the nonmoving party indicate Dr. Piper, with the authorization of Mrs. Ryan and in her presence, requested the coroner to perform the autopsy, thus meeting the statutory requirements.

Consequently, the coroner's contention that he not only had no duty to perform the autopsy, but was in fact without authority to perform it, must be rejected. Moreover, based on the affidavits, a material question of fact exists as to whether the coroner assumed the obligation of performing the autopsy in light of his agreeing to do so and his failure to perform it without notifying Dr. Piper or the family.

The summary judgment is reversed and this case is remanded for trial.

Munson, A.C.J., and McInturff, J., concur.