[No. 51795-9. En Banc. June 5, 1986.]

SEVEN GABLES CORPORATION, *Respondent,* v. MGM/UA
ENTERTAINMENT Co., *Appellant.*

*Culp, Dwyer, Guterson & Grader,* by *Richard C. Yarmuth* and *Michele Coad,* for appellant.

*William R. Bishin,* for respondent.

DOLLIVER, C.J.—Defendant MGM/UA Entertainment Co. is a distributor of motion pictures. Plaintiff Seven Gables Corporation is a theater owner and exhibitor of motion pictures. Seven Gables sued MGM/UA under RCW 19.58-.050, for a statutory decree enjoining further violations of the Washington Motion Picture Fair Competition Act, RCW 19.58.

The trial court granted plaintiff's motion for summary judgment and denied defendant's cross motion for sum-

mary judgment. It also entered a decree enjoining violations of RCW 19.58. The decree permitted defendant to engage in competitive or any other kind of negotiation if it solicited bids and received none. The trial court further awarded plaintiff attorney fees and costs. Defendant appeals claiming the trial court improperly interpreted RCW 19.58 as including film licensing by negotiation within the regulating procedures of RCW 19.58.040. It challenges the act as being both unconstitutionally vague and violative of the defendant's constitutional rights. Defendant also appeals from the award of attorney fees and costs.

We accepted certification from the Court of Appeals, and affirm the trial court, except for two provisos set forth in the injunctive decree. As this case comes to us on appeal from a summary judgment, all facts will be presented in a light most favorable to the nonmoving party. *Ryan v. Zornes*, 34 Wn. App. 63, 658 P.2d 1281 (1983).

Motion pictures are copyrighted works which are not sold outright by distributors to theater owners but are licensed to theaters for exhibition. They generally are licensed to exhibitors on a percentage rental basis, which provides for a division of the gross receipts on an agreed–upon basis. The revenue available to the distributor is dependent on the number of people who come to the theater to see the particular film.

Exhibitors obtain films to play in their theaters by entering into contracts with distributors for the right to show those films. Distributors usually initiate the licensing process for a particular film by notifying local exhibitors and requesting them to submit proposals or offers for that film. Each motion picture requires an individual distribution plan. Licensing the film to a particular theater is only one of many factors in a distributor's procedure for releasing a film. While the motion picture industry is national in scope, film licensing is a local process.

Defendant MGM/UA (along with Paramount, Warner Brothers, Columbia, Twentieth Century Fox, and Universal) is one of the six major national distributors of motion

picture films who together account for well over 80 percent of the annual gross revenue of all motion pictures in the United States. The eight highest grossing distributors account for well over 90 percent of total national gross.

There are two critical dates in the distribution of a film—the date of the licensing and the date of release (when the film is made available to the theater owner for exhibition). MGM/UA has license agreements with exhibitors either by bidding or negotiation. When using written bids, MGM/UA opens all written bids in the open bidding process mandated by RCW 19.58.040. Using the negotiation process, MGM/UA provides the same information to exhibitors as required under the act; but, based on the terms offered by the exhibitor, MGM/UA then negotiates the terms of the license without following the procedures of RCW 19.58.040. The current procedure of MGM/UA is to license films by formal bidding.

Time is of the essence in the showing of films. A large percentage of films are released to take advantage of a national marketing campaign. The release date for a picture is determined by many factors, but an alteration of a release date increases a distributor's already great financial risk.

Defendant argues forced compliance with the open bidding procedures of RCW 19.58.040 for negotiation of film licenses is not consistent with the statutory scheme. Defendant also alleges RCW 19.58 has had a negative financial impact on distribution companies and that it has been substantially burdened by the trade screening requirements and the bidding procedures of the State. MGM/UA presents affidavits from its employees and others alleging the potential harmful effects to its business interests by the application of RCW 19.58 as interpreted by the trial court's injunction. However, the Motion Picture Exhibitors of Washington, Alaska and Northern Idaho (a subsidiary of the National Association of Theater Owners) expressed the opinion that the injunction, if upheld, would be advantageous to the movie industry as a whole. Neither

Seven Gables nor MGM/UA is aware of any instance in which a film was delayed in Washington because of the statutory requirements.

I

The two major issues covered by the Washington Motion Picture Fair Competition Act, RCW 19.58, are (1) the prohibition of blind bidding, *i.e.,* the practice of distributors forcing exhibitors to negotiate or bid on a motion picture prior to its being screened for the exhibitor (RCW 19.58-.030(1)); and (2) the requirement that all bids be submitted in writing (RCW 19.58.040(2)). Since the act went into effect September 1, 1979 (*see* Laws of 1979, 1st Ex. Sess., ch. 29, § 3, p. 1103), every major distributor doing business in Washington, including MGM/UA, has complied with RCW 19.58.030 and screened its films for exhibitors prior to soliciting offers or initiating negotiations for licenses. In addition, since the enactment of RCW 19.58, two of the major distributors, Paramount and Warner Brothers, have licensed their films solely by the open bidding procedures of RCW 19.58.040, except for an occasional failure to follow the rebidding requirement.

Defendant does not challenge RCW 19.58.030. It claims, however, that RCW 19.58.040 regulates only licensing by bidding and does not regulate licensing by negotiation. Plaintiff contends, and the trial court agreed, that both licensing by negotiation and by bidding are regulated. We agree with plaintiff.

RCW 19.58.040 states:

> If bids are solicited from exhibitors for the licensing of a feature motion picture within the state, then:
>
> (1) The invitation to bid shall specify: (a) Whether the run for which the bid is being solicited is a first, second, or subsequent run; whether the run is an exclusive or nonexclusive run; and, the geographic area for the run; (b) the names of all exhibitors who are being solicited; (c) the date and hour the invitation to bid expires; and (d) the time, date, and location, including the address, where the bids will be opened, which shall be within the state.
>
> (2) All bids shall be submitted in writing and shall be

opened at the same time and in the presence of those exhibitors, or their agents, who submitted bids and who attend the bid opening.

(3) Immediately upon being opened, the bids shall be subject to examination by the exhibitors, or their agents, who submitted bids, and who are present at the opening. Within ten business days after the bids are opened, the distributor shall notify each exhibitor who submitted a bid either the name of the winning bidder or the fact that none of the bids were acceptable.

(4) Once bids are solicited, the distributor shall license the feature motion picture only by bidding and may solicit rebids if none of the submitted bids are acceptable.

In construing statutes, the goal is to carry out the intent of the Legislature. *Bellevue Fire Fighters Local 1604 v. Bellevue,* 100 Wn.2d 748, 751, 675 P.2d 592 (1984), *cert. denied,* 471 U.S. 1015 (1985). In doing so, it is the duty of the court in interpreting a statute to make the statute purposeful and effective. *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 66, 586 P.2d 1149 (1978). Any statutory interpretation which would render an unreasonable and illogical consequence should be avoided. *Puyallup v. Pacific Northwest Bell Tel. Co.,* 98 Wn.2d 443, 450, 656 P.2d 1035 (1982). Thus, in attempting to effect the intent of the Legislature, an act must be construed as a whole, harmonizing all provisions to ensure proper construction. *In re Piercy,* 101 Wn.2d 490, 492, 681 P.2d 223 (1984).

The purpose of the Washington Motion Picture Fair Competition Act is:

[T]o establish fair and open procedures for bidding and negotiation for the right to exhibit motion pictures in the state in order to prevent unfair and deceptive acts or practices and unreasonable restraints of trade in the business of motion picture distribution and exhibition within the state; to promote fair and effective competition in that business; and to insure that exhibitors have the opportunity to view a motion picture and know its contents before committing themselves to exhibiting the motion picture in their communities.

RCW 19.58.010. In construing the statute, the definitions become integral to the statutory scheme. *State v. Taylor,* 30 Wn. App. 89, 95, 632 P.2d 892 (1981). The Legislature defines bid as meaning "a written or oral offer or proposal to buy made by an exhibitor to a distributor *in response to an invitation to bid* for the license or right to exhibit a motion picture, the license stating the terms under which the exhibitor agrees to exhibit the motion picture." (Italics ours.) RCW 19.58.020(1). Thus, a bid as defined by the Legislature is (1) an "offer or proposal" (2) either "written or oral" (3) which responds "to an invitation to bid".

Most of the other state statutes include in their definition of a "bid" the terms under which the exhibitor agrees to exhibit the motion picture. Washington, however, does not. In RCW 19.58.020(1), the eventual license, not the bid, will state the agreed–upon terms—thus, in effect, broadening the definition of "bid".

In the Washington statute, a bid is an offer in response to an invitation to bid. The statute defines an invitation to bid as meaning a "written or oral solicitation or invitation by a distributor to one or more exhibitors *to bid or negotiate* for the license or right to exhibit a feature motion picture." (Italics ours.) RCW 19.58.020(9). Thus, an invitation to bid is defined as including (1) a "solicitation or invitation" (2) either "written or oral" (3) "to bid . . . for" a license or (4) "to . . . negotiate for" a license. Taken together, these two definitions appear to include all methods of bargaining designed to reach agreement in licensing a motion picture.

MGM/UA relies on the Legislature's failure to define negotiation as a sign that the negotiating procedure is not to be included within the procedures of RCW 19.58.040. However, to harmonize the different provisions of RCW 19.58 to effectuate the purpose of establishing "fair and open procedures for bidding and negotiation" (RCW 19.58-.010), both bidding and negotiation methods need to follow the procedures of RCW 19.58.040. *Washington Water Power Co.,* at 66. Any interpretation that would exempt

the negotiation process from the procedures of RCW 19.58-.040 would defeat the stated purpose of the statute and should be avoided. *Puyallup v. Pacific Northwest Bell Tel. Co., supra* at 450.

RCW 19.58.040(2) mandates that "all bids" shall be submitted in writing and opened simultaneously. Although the statute does not appear to prohibit negotiations from taking place, it does require all offers, whether written or oral, to be submitted in writing prior to the licensing of the motion picture.

It cannot be denied there is some confusion, primarily engendered by the Legislature in adopting RCW 19.58-.020(1), which defined the term "bid", and RCW 19.58-.040(2), which requires "[a]ll bids shall be submitted in writing". Nonetheless, although RCW 19.58.020(1) indicates a "bid" may be oral, the language of RCW 19.58.040(2) makes it clear that regardless of how the term "bid" is defined, any bid response to a solicitation from an exhibitor for the "licensing of a feature motion picture" eventually must be submitted in writing.

Approximately 23 states have a motion picture fair practices act with a basic framework similar to the Washington act. Bartasi, *Trade Screening Laws: A Survey and Analysis,* 6 Comm/Ent L.J. 91, 106 (1983). (Basic framework for most of these laws was provided by a model trade screening law. Bartasi, 6 Comm/Ent L.J. at 107 n.65.) Both MGM/UA and Seven Gables rely heavily in their briefs on two recent cases analyzing and applying similar statutes in Pennsylvania and Ohio. *Associated Film Distrib. Corp. v. Thornburgh,* 614 F. Supp. 1100 (E.D. Pa. 1985); *Allied Artists Pictures Corp. v. Rhodes,* 496 F. Supp. 408 (S.D. Ohio 1980), *aff'd in part, remanded in part,* 679 F.2d 656 (6th Cir. 1982). Although the cases are helpful as a guide in analyzing the constitutional issues which defendant urges the court to consider, RCW 19.58 and the Pennsylvania and Ohio statutes have key distinctions which render comparisons inutile.

In both the Ohio and Pennsylvania statutes, the term

"bid" is defined as:

[A] written or oral proposal by an exhibitor to a distributor, which proposal is in response to an invitation to bid *or negotiate* and states the terms under which the exhibitor will agree to exhibit . . .

(Italics ours.) Ohio Rev. Code Ann. § 1333.05(F) (Page 1979); Pa. Stat. Ann. tit. 73, § 203-3 (Purdon Supp. 1985). The Washington statute in contrast defines bid as:

[A] written or oral offer or proposal to buy made by an exhibitor to a distributor in response to an invitation to bid for the license or right to exhibit a motion picture, the license stating the terms under which the exhibitor agrees to exhibit the motion picture.

RCW 19.58.020(1).

In the Ohio and Pennsylvania statutes, a bid may be in response to an invitation to bid—or to negotiate. If the "bid" is in response to an invitation to bid, then the requirement in both states is that all bids shall be submitted in writing and shall be opened at the same time and in the presence of at least one of the exhibitors, or their agents, who submitted bids. In Washington, however, a bid is in response only to an "invitation to bid" which includes an invitation to negotiate. All methods of licensing are subsumed within Washington's statute.

Washington law also clearly states that a purpose of the statute is to establish fair and open procedures for both bidding and negotiating for the licensing of motion pictures. RCW 19.58.010. In Pennsylvania's statute (Pa. Stat. Ann. tit. 73, § 203-2 (Purdon Supp. 1985)), a similar purpose is not stated, and Ohio's statute has no legislative purpose provision at all.

When interpreting a statute, every presumption should favor the act of the Legislature and all doubts should be resolved in support of the act. *Grant v. Spellman,* 99 Wn.2d 815, 819, 664 P.2d 1227 (1983). A key purpose of RCW 19.58 is to establish fair and open procedures for bidding *and* negotiation; RCW 19.58.040 provides procedures designed to achieve that purpose. Although some

sections of the act appear to refer to bidding and negotiating as alternate methods of licensing (*e.g.,* RCW 19.58.010, .020(2)), the definitions of "bid" and "invitation to bid" appear to encompass all methods of licensing motion pictures once a distributor solicits offers. The Washington statute, unlike the statutes in most other states, does not define a bid as including the terms under which the exhibitor agrees to exhibit a film. In Washington, a "bid" culminates in a license which provides those terms. Therefore, even if the court could derive a different interpretation from the language of RCW 19.58, this court "should adopt that one which best advances the overall legislative purpose." *State v. Bishop,* 94 Wn.2d 116, 118, 614 P.2d 655 (1980).

In its decree enjoining violations of RCW 19.58, the trial court states two provisos. The first exempts a distributor from the procedures of RCW 19.58.040 in "those instances in which [a distributor] does not solicit more than one exhibitor with respect to a particular license of a motion picture at a particular theater . . ." The other proviso releases a distributor from the bidding procedure regulations if that distributor received no written bids in response to an "invitation to bid". We hold the trial court was in error in making these two exceptions. With reference to the first proviso, RCW 19.58.020 includes solicitations "by a distributor to one or more exhibitors." RCW 19.58.020(9). As to the second proviso, RCW 19.58.040(4) provides "[o]nce bids are solicited, the distributor shall license the motion picture only by bidding and may solicit rebids if none of the submitted bids are acceptable." This provision ensures the bidding procedures are followed and that a distributor will not go through the motions and, thus, negotiate privately once no bids are received or accepted. To hold otherwise would defeat the purpose of the statute.

We, therefore, affirm the trial court's application of RCW 19.58 in its injunction but reverse the two provisos.

## II

██ ██ MGM/UA next argues RCW 19.58 is unconstitutionally void for vagueness and, therefore, this action should be dismissed. Vagueness in a statute raises an issue of procedural due process. The crucial question is whether the statute provides fair notice of the conduct prohibited. *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). A statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. Rockford,* 408 U.S. 104, 108, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). Under the Fourteenth Amendment, a statute may be void for vagueness if it is framed in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984). A statute may overcome vagueness objections if it is clear what the statute as a whole prohibits. *Grayned,* at 110. A statute's announced purpose can provide the clarity necessary to establish what a statute prohibits. *Grayned,* at 112.

MGM/UA claims RCW 19.58 is unconstitutionally vague in two areas: (1) the statute does not clearly prohibit negotiation as a motion picture licensing method; and (2) the statute does not provide a distinction between competitive negotiation and bilateral negotiation as formulated in the trial court's injunction.

The key issue in the argument of MGM/UA is whether the statute clearly includes negotiation within the scope of its procedures. As a whole, it is clear from a reading of RCW 19.58 that the purpose of the act is to "establish fair and open procedures for bidding *and negotiation* for the right to exhibit motion pictures . . ." RCW 19.58.010.

Unlike the ordinance in *Myrick,* RCW 19.58 has defined the key terms at issue in the present case. Thus, a "bid" under RCW 19.58 is an offer or proposal made in response to an "invitation to bid", which is defined as a "written or oral solicitation or invitation by a distributor to one or more exhibitors *to bid or negotiate* . . ." (Italics ours.) RCW 19.58.020(9). Reading these two definitions together,

a person of reasonable understanding could determine that a "bid" is any offer or proposal in response to an invitation to bid or negotiate. *Accord, State v. Sherman,* 98 Wn.2d 53, 653 P.2d 612 (1982). Also, comparison between similar statutes in other states reveals some key language differences that would suggest a closer comparison to a person of common intelligence. Because the Legislature chose to define specifically these terms, all methods of bargaining for a motion picture license are subsumed within the scope of RCW 19.58, regardless of what different interpretations these terms may receive outside of the statute.

The fact that a statute requires interpretation does not make it void for vagueness. Few statutes could withstand a test so strict. In RCW 19.58, the Legislature clearly intended the fair and open procedures for licensing motion pictures to cover both bidding and negotiation methods. MGM/UA had fair notice of the purpose and scope of the statute.

### III

Defendant next claims the trial court erred in granting summary judgment because there were genuine issues of material fact regarding the constitutionality of RCW 19.58, as interpreted by the trial court. The violations of the United States Constitution allegedly involve the First Amendment, the commerce clause, guaranties of due process and equal protection under the Fourteenth Amendment, and the federal copyright act.

 The purpose of a summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. *Olympic Fish Prods., Inc. v. Lloyd,* 93 Wn.2d 596, 602, 611 P.2d 737 (1980). On review of a summary judgment, this court must decide whether the affidavits, facts, and record have created an issue of fact and, if so, whether such issue of fact is material to the cause of action. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). Therefore, the adverse party must set forth specific facts showing there is a genuine issue for trial

or have the summary judgment, if appropriate, entered against them. CR 56(e); *see also LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

In order to establish its constitutional and equitable defenses, MGM/UA was obliged to provide admissions, affidavits, declarations, or other sworn testimony presenting specific facts which, if believed, would justify a court in holding RCW 19.58.040 unconstitutional as applied or that Seven Gables was guilty of misconduct which prevented the court from entering a statutory injunction. A nonmoving party in a summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. *Dwinnell's Cent. Neon v. Cosmopolitan Chinook Hotel,* 21 Wn. App. 929, 587 P.2d 191 (1978).

MGM/UA implies that any raising of constitutional issues summarily defeats a summary judgment and mandates that its claims must be resolved at trial. This is not the case. Courts can and have upheld decisions on summary judgment regarding constitutional issues, even those involving challenges of a state's motion picture fair competition act. *See Warner Bros. v. Wilkinson,* 533 F. Supp. 105 (D. Utah 1981) (court held on a summary judgment that Warner Brothers had no bona fide First Amendment, commerce clause, copyright or due process claims); *Paramount Pictures Corp. v. Busbee,* 250 Ga. 252, 297 S.E.2d 250 (1982) (court on summary judgment performed constitutional balancing tests and found that Georgia's statute was not unconstitutional—even after assuming the truth of Paramount's averments).

To meet the requirement of CR 56(e), defendant presented to the trial court sworn statements from Richard Graff, president of domestic distribution for MGM/UA and Sebastian "Bus" Amato, branch manager of the Belle-

vue, Washington, office of MGM/UA. We have carefully reviewed the affidavits as well as the extensive record before us. There appears to be no specific facts alleged that raise an issue of material fact.

MGM/UA mentions, only once, two issues involving the Washington Constitution and then fails to discuss these issues any further in its brief. "[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." *United States v. Phillips,* 433 F.2d 1364, 1366 (8th Cir. 1970). As such, these issues do not command consideration and discussion.

We point out that MGM/UA and the other major national film distributors have attacked similar statutes in Ohio and Pennsylvania. *See Allied Artists Pictures Corp. v. Rhodes,* 496 F. Supp. 408 (S.D. Ohio 1980), *aff'd* on blind bidding and open bidding, *rev'd* for further evidence on guaranties, 679 F.2d 656 (6th Cir. 1982); *Associated Film Distrib. Corp. v. Thornburgh,* 614 F. Supp. 1100 (E.D. Pa. 1985). Although these statutes have some specific differences (*e.g.,* the Ohio and Pennsylvania statutes enacted additional limitations on the freedom of distributors to license their films), the same claims and theories of constitutional injury were urged in those cases.

The *Allied Artists* court stated the issues raised were not of constitutional dimensions and that "[n]either the Commerce Clause, nor the First Amendment, nor the copyright or antitrust laws guarantee the [distributors] unfettered discretion to license their films as they please." *Allied Artists,* at 452.

The Pennsylvania court concluded that "[t]he effect of the Act on the motion picture business is relatively minor." *Associated Film Distrib. Corp.,* at 1106. The "burdens imposed by the Pennsylvania Act are incidental". *Associated Film Distrib. Corp.,* at 1118. "The impact of this law on First Amendment freedoms [is] de minimis . . ." *Associated Film Distrib. Corp.,* at 1119. "The main circumstances which may slow the production and post–production processes have always existed and have nothing

to do with legislation." *Associated Film Distrib. Corp.*, at 1104.

Summary judgment properly was granted on all issues.

IV

On the issue of attorney fees, the initial claim of MGM/UA that Seven Gables should not receive attorney fees because they are not an "aggrieved" party under RCW 19.58.050 is without merit. MGM/UA next challenges the amount of attorney fees and costs awarded to Seven Gables on the grounds that the trial court erred in making an upward adjustment based on the quality of representation by Seven Gables. At the time representation was initiated, the regular hourly billing rate for plaintiff counsel was $100. Beginning in April 1984, the hourly rate was increased to $140. The trial court examined the quality of the work and determined for the hours expended by plaintiff counsel that a reasonable fee was $35,000. In examining the record, we find the trial court did not abuse its discretion in reaching a reasonable fee under either the Model Rules of Professional Conduct (*see* CPR DR 2–106 (1985)) or the "lodestar" formula adopted by a plurality of the court in *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983). Therefore, we do not need to review the intricacies of the lodestar formula in *Bowers* in upholding the trial court's award of fees.

We affirm the trial court in all respects except for the language in the injunctive decree which sets forth the two provisos which is reversed. The issue of attorney fees on appeal is remanded to the trial court for its determination.

UTTER, BRACHTENBACH, DORE, PEARSON, and CALLOW, JJ., concur.

ANDERSEN, J. (dissenting)—I disagree with the majority's interpretation of section 4 of the Washington Motion Picture Fair Competition Act, RCW 19.58. I agree with the defendant that RCW 19.58.040 does not apply to licensing by negotiation. As the statute states, its restrictions apply

only if *bids* are solicited.

It is important initially to discuss the practical implications of the majority's decision, since the majority does not do so. Before discussing these implications, it is equally important to understand the processes of bidding and negotiating.

One court describes the elements of *bidding* as follows:

distributors use bidding in areas where competition among exhibitors exists. . . . normally the distributor sends exhibitors in the area an "invitation to bid" which contains a brief description of the film, the time at which it will be available and the suggested licensing terms. The exhibitor submits a bid which will include not only financial terms, but also minimum length of run and any requested "clearances" over other theatres in the area. . . . Traditionally, terms on licenses procured by bidding are "firm"; the distributor will not be expected to reduce the agreed terms if the picture is unsuccessful.

*Associated Film Distrib. Corp. v. Thornburgh,* 614 F. Supp. 1100, 1103 (E.D. Pa. 1985).

The more flexible *negotiation* process is then described:

Distributors normally use negotiation in areas where there is little or no competition among exhibitors. Under negotiation, a representative of the distributor contacts a specific exhibitor and, without soliciting other offers, attempts to work out a licensing arrangement. Traditionally, terms under negotiated licenses are not firm. If a picture bombs, the distributor may renegotiate the terms downward.

*Associated Film,* at 1103.

A variation of this practice is competitive negotiation, which is oral bidding. The distributor contacts the exhibitor and indicates that he is soliciting offers from more than one theatre.[1]

Both bidding and negotiating have their advantages. The advantage of licensing pictures by negotiation is that it enables distributors to finalize exhibition licenses within a

---

[1]*Associated Film Distrib. Corp. v. Thornburgh,* 614 F. Supp. 1100, 1103 (E.D. Pa. 1985).

relatively short period of time.[2] On the other hand, while bidding may be more time consuming, many distributors prefer it because they believe the competitive nature of the bidding process results in higher rental terms.[3]

Under the majority's analysis, the distinctions between negotiating and bidding will disappear. The time and money saving advantages of negotiation will be lost in a process that requires written negotiations (now turned into bids), examination of those bids and rebidding if no bids are submitted. It is interesting to note that the majority goes even farther than the plaintiff requested. Seven Gables sought to force only competitive negotiation (negotiation between a distributor and more than one exhibitor) to comply with the bidding requirements of RCW 19.58.040. Plaintiff also would have allowed negotiation if no bids were submitted. The trial court ruled accordingly and exempted distributors from the procedures of RCW 19.58-.040 if they dealt with only one exhibitor and if no written bids were received in response to an invitation to bid.

In a sweeping and uninvited incursion into private business relationships, however, the majority holds that a distributor must comply with RCW 19.58.040 even when dealing with only exhibitor. This means that an exhibitor must submit proposed terms in writing, must be present when that offer is read, and may examine the terms of his own offer. The majority also holds that negotiation is forbidden even if no written offers are submitted. The flexibility of negotiation is thus outlawed, and in its place is substituted an unwieldy and impractical set of guidelines.

Not only is the result of the majority's analysis unwieldy, it is also unnecessary under RCW 19.58. The majority illogically interprets the motion picture fair competition act in order to conclude that negotiation is subject to the bid-

---

[2]Bartasi, *Trade Screening Laws: A Survey and Analysis*, 6 Comm/Ent L.J. 91, 99 (1983).

[3]Bartasi, 6 Comm/Ent L.J. at 99.

ding requirements of RCW 19.58.040.

A review of legislative enactments regulating motion picture competition in Pennsylvania and Ohio, and decisions interpreting those enactments, is helpful in interpreting our own statutes on the subject. The Washington act is almost identical to Pennsylvania's, and is in many ways similar to the Ohio statutes. The Sixth Circuit interpreted Ohio's motion picture license agreements act as follows:

> Although the statute allows producers and distributors to market films to exhibitors through negotiations rather than competitive bidding, the statute establishes guidelines for competitive bidding if distributors choose bidding as the method of marketing a film.

*Allied Artists Picture Corp. v. Rhodes,* 679 F.2d 656, 658 (6th Cir. 1982).

A federal District Court similarly recognized that Pennsylvania's Feature Motion Picture Fair Business Practices Law "leaves open to the choice of distributors whether to license by bidding or negotiation."[4] Commentators with no axes to grind in the matter have recognized that the acts in all three of these states—Pennsylvania and Ohio, as well as Washington—allow both negotiating and bidding.[5]

The majority finds comparison of the three acts "inutile" because of "key distinctions" in their wording. I fail to see the variations in wording as "key" at all, and I do find an actual comparison of these statutes to be most helpful in interpreting RCW 19.58.

First of all, several sentences in the purpose provisions of the Washington and Pennsylvania acts are identical.[6] Sec-

---

[4]*Associated Film,* at 1112.

[5]Bartasi, 6 Comm/Ent L.J. at 107 n.65; Note, *Motion Picture Licensing Acts: An Analysis of the Constitutionality of Their Provisions,* 51 Fordham L. Rev. 293, 304 n.81 (1982).

[6]Both acts state that their purposes are to prevent unfair and deceptive acts or practices and unreasonable restraints of trade in the business of motion picture distribution and exhibition within the state, to promote fair and effective competition in that business, and to insure that exhibitors have the opportunity to view

ond, the definitions of "bid" in all three acts are similar. Washington defines a bid as

a written or oral offer or proposal to buy made by an exhibitor to a distributor in response to an invitation to bid for the license or right to exhibit a motion picture, the license stating the terms under which the exhibitor agrees to exhibit the motion picture.

RCW 19.58.020(1).

Ohio and Pennsylvania define a bid as

a written or oral proposal by an exhibitor to a distributor, which proposal is in response to an invitation to bid or negotiate and states the terms under which the exhibitor will agree to exhibit [a motion picture].

See Pa. Stat. Ann. tit. 73, § 203-3 (Purdon Supp. 1985); Ohio Rev. Code Ann. § 1333.05(F) (Page 1979).

The majority takes the position that since a bid in Washington (unlike those in Pennsylvania or Ohio) does not have to state the terms of exhibition, it encompasses negotiation. I consider this analysis unsound. Under the majority's reasoning, a traditional bid need not contain exhibition terms. If such terms are not present, what is the point of a bid? While the definition does not say so explicitly, it seems obvious that a bid must contain the terms under which an exhibitor will agree to exhibit a motion picture. Indeed, amendments to RCW 19.58.020(1) that Seven Gables (plaintiff herein) unsuccessfully pushed at the last session of the Legislature would have required bids to contain exhibition terms.[7]

It is true that Washington's bid definition does not state, as do the Pennsylvania and Ohio definitions, that a bid may be made in response to an invitation to bid or negotiate. Both licensing methods are referred to, however, in the

---

a motion picture and know its contents before committing themselves to exhibit it in their communities. See RCW 19.58.010; Pa. Stat. Ann. tit. 73, §§ 203-2(7), (8), (10) (Purdon Supp. 1985).

[7]See Arnold, Legislature Mulls a New Bill To Regulate Movie Bidding, Seattle Post-Intelligencer, at C5 (Feb. 4, 1986); House Bill 1342, 49th Legislature (1986). This bill passed the House of Representatives but not the Senate.

definition of an invitation to bid. In Washington, as in Pennsylvania and Ohio, an invitation to bid is "a written or oral solicitation or invitation by a distributor to one or more exhibitors to *bid or negotiate . . .*" (Italics mine.) *See* RCW 19.58.020(9); Pa. Stat. Ann. tit. 73, § 203-3 (Purdon Supp. 1985); Ohio Rev. Code Ann. § 1333.05(E) (Page 1979). In the statutes of all three states, therefore, negotiation is mentioned as a distinct activity. Here too the recent proposed amendments to RCW 19.58 are of interest. Seven Gables unsuccessfully urged the Legislature to omit the definition of an invitation to bid altogether, and had it been successful, would thereby have strengthened its present interpretation and the majority's interpretation of RCW 19.58.040.[8] The Legislature, however, declined to adopt those proposed amendments.

The bidding/negotiating distinction is found in other sections of RCW 19.58, most of which House Bill 1342, had it been successful, would have deleted. For example, under our present act trade screening is defined as the exhibition of a feature motion picture "which is open to all exhibitors from whom the distributor intends to solicit bids or with whom the distributor intends to negotiate for the license or right to exhibit the feature motion picture." RCW 19.58-.020(14). RCW 19.58.030(2), in turn, states that "[n]o bids may be returnable [and] no negotiations for the exhibition or licensing of a motion picture may take place" before a motion picture has been trade screened. Then subsection 3 of this same statute provides that notice of the screening must be given to exhibitors "from whom bids will be solicited or with whom negotiations will be conducted". To me, at least, it is clear that throughout the act two distinct methods of licensing, namely bidding and negotiation, are contemplated. When RCW 19.58.040 states that it applies to solicitation of "bids", it should be understood to mean what it says—it pertains to "bidding", *not* negotiating.

As discussed earlier, the majority relies on parts of the

---

[8]*See* House Bill 1342.

bid definition contained in RCW 19.58.020(1) to support its position that "bid" includes "negotiation" under the Washington act. The majority dismisses that part of the statutory definition that a bid may be oral, however, in attempting to fit both bidding and negotiating into the requirements of RCW 19.58.040. That statute says that a bid must be submitted in writing.[9] If the definition of a bid says that it may be oral or written, and if (as the majority now declares) that definition includes negotiations, then to my mind the most sensible way to resolve any conflict between the definition and RCW 19.58.040 is to simply conclude that negotiations, which are oral, need not comply with the requirements of section .040.

I also believe that the majority overemphasizes the importance of the written bid requirement in the act when it says that the two major issues covered by the Washington act are (1) the prohibition of blind bidding, and (2) the requirement that all bids be submitted in writing. To me this is a false dichotomy. The majority correctly says that the prohibition of blind bidding is a major issue covered by the act, since that prohibition comprises a major statute within the act.[10] To my view the majority incorrectly states, however, that written bids are another major issue. The requirement that bids be in writing is found in only one subsection of one of the several statutes contained in the act.[11] That statute is the one that comprehensively embraces what is obviously the second major issue covered by the act, namely, the rules that are to be followed when bids are solicited.[12] I would read this state's motion picture fair competition act to address the following two issues: (1)

---

[9]RCW 19.58.040(2).

[10]*See* RCW 19.58.030.

[11]*See* RCW 19.58.040(2).

[12]*See* RCW 19.58.040. Similar guidelines are contained in Pa. Stat. Ann. tit. 73, § 203–8 (Purdon Supp. 1985); Ohio Rev. Code Ann. § 1333.07 (Page 1979).

the prohibition of blind bidding and (2) the requirements to be met when bids are solicited.

The majority seemingly elevates the written bid requirement into a major concern of the act in order to justify requiring negotiations to meet the bidding requirements of RCW 19.58.040. I do not see any way, however, that such a forced interpretation can be reasonably justified. The written bid requirement of RCW 19.58.040(2) makes sense to me only when that statute is interpreted as applying only to bidding, and *not* to negotiating. The same writing requirement is also contained in both the Pennsylvania and Ohio acts, which contrary to the majority's position and supportive of mine, allow oral negotiations.[13]

I believe that the majority strains to interpret RCW 19.58.040 in a way that is both illogical and makes little practical sense. The benefits of oral negotiating referred to throughout the act are thus interpreted out of the statute by the majority's analysis, and in their place are inserted cumbersome and unnecessary procedures that are nowhere mandated in the act.[14]

Because I would conclude that RCW 19.58.040 does *not* apply when a distributor and one or more exhibitors negotiate to license a film, I dissent.

GOODLOE and DURHAM, JJ., concur with ANDERSEN, J.

---

[13]*See* Pa. Stat. Ann. tit. 73, § 203–8(c) (Purdon Supp. 1985); Ohio Rev. Code Ann. § 1333.07(D) (Page 1979).

[14]RCW 19.58.