IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CRAIG S. CULBERTSON, a married man, | ) ) ) | No. 32702-7-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| WELLS FARGO INSURANCE SERVICES USA, INC., a North Carolina corporation; JOSHUA TYNDELL and JANE DOE, and the marital community comprised thereof; RHONDA IDE and JOHN DOE, and the marital community comprised thereof, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Craig Culbertson appeals the dismissal at summary judgment of his wrongful termination suit against Wells Fargo Insurance Services, primarily contending that his employer did not live up to the promises of the employee handbook and that he was owed commissions earned after his departure from the company. We affirm.

FACTS

Mr. Culbertson was hired by a Wells Fargo subsidiary company in 2006 on an at-will basis to sell employee benefit plans, primarily health and dental insurance. He was

at that time given an employee handbook that outlined Wells Fargo policies and procedures for resolving internal disputes and reviewing termination decisions. The handbook opened with the disclaimer that it did not constitute a contract and did not alter at-will employment status. Clerk's Papers (CP) at 591. It also repeated that disclaimer at the beginning of both the "Dispute Resolution" and "Involuntary Termination" sections of the handbook. CP at 634, 635, 687.

In general terms, Mr. Culbertson was paid a salary and also received a commission from both existing accounts and new sales. Wells Fargo adjusted his compensation rates and employment terms on a nearly annual basis. The 2013 sales incentive plan provided that commissions would be paid on a quarterly basis. CP at 1022. The employee was entitled only to commissions earned up to the point of termination. CP at 1023. Prior compensation plans had been silent concerning commissions earned after termination. Information about the 2013 compensation plan was included in an email that contained a link to a website posting of the new plan.

When originally hired in 2006, Mr. Culbertson signed a Trade Secrets Agreement (TSA). Among its provisions, the TSA required Mr. Culbertson to maintain the company's secrets after his employment, included a noncompetition agreement that prohibited him from soliciting business from his customers for two years, and expressly confirmed that his employment remained at-will. CP at 575-578. The TSA was updated in 2010. CP at 545-547, 566-568. The new TSA again included a confidentiality

2

agreement, a strengthened (from the company's perspective) noncompetition agreement, and a reaffirmation that employment remained at-will. *Id.* In exchange for signing the agreement, Wells Fargo agreed to pay an increased commission for one year. CP at 547, 566. Mr. Culbertson signed the agreement. CP at 568.

On February 3, 2014, Mr. Culbertson was called into his supervisor's office, accused of falsifying customer accounts, and summarily fired without resort to the company's dispute resolution process. CP at 142. Litigation rapidly ensued, with both sides suing the other on the same day, March 21, 2014. Wells Fargo filed suit to enforce the TSA, while Mr. Culbertson filed the present case challenging his termination and the nonpayment of earned commissions.

Wells Fargo moved for partial summary judgment in the TSA litigation, seeking to strike Mr. Culbertson's affirmative defense of lack of consideration. There Wells Fargo took the position that it had provided adequate compensation for the new TSA. Judge Annette Plese granted the motion, determining that there was sufficient compensation to support the modification of the TSA.

Meanwhile, after a period of discovery, Wells Fargo moved for summary judgment on most of the claims in the wrongful termination litigation. Mr. Culbertson filed a motion for a continuance, seeking additional time to obtain discovery concerning, and perform a study of, his Wells Fargo computer to confirm that he had never clicked on the

3

link to the 2013 compensation plan contained in the email he had received. The trial court denied the continuance.

The trial court, the Honorable Michael Price, then granted Wells Fargo's motion for summary judgment. After stipulating to dismissal of his remaining additional claims, Mr. Culbertson timely appealed the summary judgment ruling. The matter ultimately proceeded to oral argument before this panel.

## ANALYSIS

Mr. Culbertson argues that the trial court erred in denying his request to continue the hearing for additional discovery, erred in determining that the handbook did not create an enforceable promise, and erred in applying the 2013 compensation plan to deny him commissions on existing accounts. We address those three claims in the noted order.[1]

*Continuance for Discovery*

CR 56(f) permits the trial court to order a continuance to allow further discovery where it appears that the responding party, for good reason, cannot present facts essential to its opposition of summary judgment. Review of a denial of a motion under CR 56(f) is for an abuse of discretion. *Tellevik v. Real Prop. Known As 31641 W. Rutherford St.*, 120

---

[1] Mr. Culbertson also argues that he is entitled to attorney fees pursuant to RCW 49.48.030 in the event he successfully obtains his commissions. In light of our disposition of that issue, we do not further discuss the attorney fee request.

4

Wn.2d 68, 90, 838 P.2d 111 (1992). A court may deny such a motion where (1) the requesting party fails to offer a good reason for the delay, (2) the requesting party does not state what evidence is desired, or (3) the desired evidence will not raise a genuine issue of material fact. *Id.*

The requested information failed the third *Tellevik* standard. Mr. Culbertson argued that he was unaware of the terms of the 2013 compensation plan. While we will discuss the merits of that argument later, discovery in support of that claim was of no moment here. For purposes of summary judgment, the trial court was required to view the evidence in Mr. Culbertson's favor. *E.g., Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Mr. Culbertson's affidavit in opposition to the motion for partial summary judgment stated that he had never clicked the e-mail link to check the terms of the 2013 compensation plan and had never read the plan. CP at 142. A favorable report on the anticipated discovery would do no more than corroborate Mr. Culbertson's affidavit.[2]

Thus, the discovery would add nothing to the summary judgment since the trial court already had to assume the truth of Mr. Culbertson's evidence on that point. The discovery would not raise an issue of material fact. Under *Tellevik*, the trial court had reasonable grounds for denying the request. There was no abuse of discretion.

---

[2] Counsel for Mr. Culbertson agreed during oral argument to this court that the information would corroborate his client.

No. 32702-7-III
*Culbertson v. Wells Fargo Ins. Servs. Inc.*

*Employee Handbook*

Mr. Culbertson argues that he was wrongfully terminated because Wells Fargo denied him the process guaranteed him by the employee handbook. That document does not bear the interpretation he places on it.

Initially, we note the well settled standards governing review of a summary judgment. This court reviews a summary judgment de novo, performing the same inquiry as the trial court. *Lybbert*, 141 Wn.2d at 34. The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.* "A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is essential to the plaintiff's claim." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 118, 279 P.3d 487 (2012).

The moving party bears the initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If a defendant makes that initial showing, then the burden shifts to the plaintiff to establish there is a genuine issue for the trier of fact. *Id.* at 225-226. "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). While questions of fact typically are left to the trial process, they may be treated

6

as a matter of law if "reasonable minds could reach but one conclusion" from the facts. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985). A party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id.*

Here, the trial court concluded that there was no material issue of fact to present to a jury because the handbook did not provide a promise of specific treatment and did not alter the at-will nature of the employment relationship. CP at 223. We agree.

The handbook describes a process of escalating responses to issues at work, starting with a discussion with a supervisor, then proceeding to either the supervisor's supervisor or a human resources representative, and possibly even mediation. CP at 634-635. However, the policy also expressly states:

> In most cases, if you have a performance issue your supervisor will work with you to provide the appropriate performance counseling and corrective action so that you have the opportunity to improve. ***However, the policy is not progressive.*** This means that we reserve the right to escalate the process or use any part of it that we feel is appropriate for the situation— and, if necessary, to terminate employment without implementing performance counseling and corrective action. This is consistent with our "employment at will" policy below.

CP at 633 (emphasis in original).

The handbook then goes on to discuss at will employment:

> This *Handbook* is not a contract of employment. Your employment with a Wells Fargo company has no specified term or length; both you and Wells

7

> Fargo have the right to terminate your employment at any time, with or without advance notice and with or without cause.
>
> This is called "employment at will." Only an officer of Wells Fargo at the level of executive vice president or higher, authorized by the senior Human Resources Manager for your region or line of business, may alter your at-will status or enter into an agreement for employment for a specified period of time. Any modification to your at-will employment status must be confirmed in writing by an officer of Wells Fargo at the level of executive vice president or higher, authorized by the senior Human Resources Manager for your region or line of business.

*Id.*

Reasonable minds could reach but one conclusion in this situation. Although Wells Fargo had a process for resolving disputes, neither party had to follow that process and the existence of the process did not alter the at-will nature of the employment relationship. Indeed, Wells Fargo expressly stated that it reserved the right not to follow the process in cases of termination. CP at 633.

The handbook stated a possible dispute resolution process, but did not specifically promise that the process would apply in all circumstances, and particularly noted the termination process as one likely exception. Instead, the handbook stated a process that both sides could agree to use, but did not require either side to do so.

The handbook did not create a right of Mr. Culbertson to invoke the dispute resolution process. Summary judgment was properly granted on this issue.

8

*Commissions After Termination*

Mr. Culbertson also argues that Wells Fargo owed him commissions earned on his existing accounts after he left employment. He contends that the 2013 compensation plan was ineffectual because his compensation was subject to bilateral agreement due to the 2010 TSA amendment and that Wells Fargo was judicially estopped from contending otherwise. Since he did not agree to the 2013 plan, he concludes that the procuring cause doctrine would allow him to earn post-termination commissions. However, Judge Price concluded that the 2013 compensation plan was effective and that Wells Fargo already had made all payments owing under that plan. CP at 223-224. We again agree.

Several different legal doctrines relate to this argument. First, we note that a terminable-at-will employment contract may be modified unilaterally by the employer. *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 73, 199 P.3d 991 (2008). Modification is an inherent feature of at-will employment since the employer could simply terminate the old contract and offer a new one. *Id.* at 77-78.

The second doctrine at play is judicial estoppel. This equitable doctrine prevents a party from gaining an advantage by asserting one position in court and later taking a clearly inconsistent position. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224-225, 108 P.3d 147 (2005). A second purpose of the doctrine is to "'preserve respect for judicial proceedings.'" *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting *Cunningham*, 126 Wn. App. at 225). Courts focus

9

on three factors when deciding whether to apply judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party would gain an unfair advantage from the change. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008) (citing *Arkison*, 160 Wn.2d at 538-539).

The third doctrine implicated by this argument involves Washington's policy on noncompetition agreements. A noncompetition agreement entered into at the start of employment is ordinarily valid as part of the employment contract, but any change to the agreement or a newly incorporated noncompetition agreement requires independent consideration to be valid. *See Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004). This third doctrine was at issue before Judge Plese. As noted previously, Judge Plese concluded that the increased commission was adequate consideration for the amended TSA.

Mr. Culbertson argues that Wells Fargo's representations before Judge Plese estop it from challenging his argument that he now had a bilateral compensation agreement due to his signing the 2010 TSA. This argument fails on several bases. First, there is nothing in the arguments to Judge Plese indicating that Wells Fargo contended Mr. Culbertson's future compensation was governed by the new TSA agreement. Instead, it simply argued, and Judge Plese found, that the one year bump in commissions was adequate compensation for the more stringent noncompetition agreement. The fact

10

that Mr. Culbertson signed the 2010 TSA was not in dispute in the prior litigation. Mr. Culbertson wants to draw a legal *conclusion* from that action, but it was not a conclusion that Wells Fargo argued for in the TSA litigation and there is no basis for applying estoppel in this case.

Second, the 2010 TSA itself does not support the argument Mr. Culbertson is now making. The TSA expressly indicated that the new compensation was for 2010 only, and the TSA agreement again confirmed that it did not alter the at-will employment status.[3] CP at 566, 568. There is no basis for finding that the 2010 TSA agreement implicitly created a provision contrary to its expressed terms.

Third, even if the parties in 2010 had a bilateral compensation agreement, the continued existence of the at-will employment relationship still permitted Wells Fargo to unilaterally change the terms of employment. *Duncan*, 148 Wn. App. at 73. That was done here. Wells Fargo first changed the terms of compensation in 2011. Wells Fargo changed the terms of compensation again in 2013.[4] The at-will nature of the employment permitted the changes. *Id.*

---

[3] "I understand that my employment with the Company is 'at will' and nothing in this document changes, alters or modifies my 'at will' status. . . ." CP at 568.

[4] We note that whether or not he knew about the 2013 terms, Mr. Culbertson did know that the company had unilaterally implemented them and did not challenge that action when it was taken, just as he did not challenge the 2011 changes.

11

No. 32702-7-III
*Culbertson v. Wells Fargo Ins. Servs. Inc.*

For all three of the noted reasons, we agree with the trial court that the 2013 compensation plan was in effect. Wells Fargo paid Mr. Culbertson the commissions he was owed under that plan. Accordingly, the trial court also correctly granted summary judgment on that issue.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Fearing, J.