246 P.3d 835 (2011)
COLORADO STRUCTURES, INC., doing business as CSI Construction Company, a Colorado corporation, Appellant,
v.
BLUE MOUNTAIN PLAZA, LLC, a Washington limited liability company; Meyer Equities, LLC, a Delaware limited liability company; Powers Steel Group, LLC, a Washington limited liability company; Bruce Heating & Air Conditioning, Inc., an Oregon corporation; Paras General Contractors, Inc., a Washington corporation; Koncrete Industries, Inc., a Washington corporation; Kennewick Industrial & Electrical Supply, Inc., a Washington corporation; K2MG Interiors, Inc., an Oregon corporation; Bar-A Construction, Inc., a Washington corporation; The Ogilvie Company, Inc., a Washington corporation; 360 Architectural Foam, Inc., an Oregon corporation; Tri States Rebar, Inc., a Washington corporation; CLC Associates, Inc., the Oregon assumed name of Colorado Land Consultant, Inc., a Colorado corporation; Materials Testing & Inspection, Inc., an Idaho corporation; American Civil Constructors West Coast, Inc., dba ACC Hurlen Construction, a California corporation; RLC, Inc., a Washington corporation; Icon Corporation, a Washington corporation; and K & B Excavating, Inc., a Washington corporation, Defendants,
TMC, Inc., doing business as Timothy McGourty, an Idaho corporation, Appellant,
Equity Funding, LLC, a Washington limited liability company; Western Development Partners, LLC, a California limited liability company; Walla Walla Holdings I, LLC, a Washington limited liability company, Respondents.
Nos. 28480-8-III, 28598-7-III.
Court of Appeals of Washington, Division 3.
January 25, 2011.
*836 Joseph A. Yazbeck, Jr., Attorney at Law, Portland, OR, Kara Heikkila, Hall Farley Oberrecht & Blanton PA, Boise, ID, for Appellant.
*837 Michael E. Gossler, Montgomery Purdue Blankinship & Austin, Marshall L. Ferguson, Daniel W. Ferm, Robert Walton Sargeant, Williams, Kastner & Gibbs PLLC, Seattle, WA, for Respondents.
KORSMO, A.C.J.
¶ 1 Colorado Structures, Inc. (CSI) appeals the dismissal on summary judgment of its contractor's lien. We agree with the trial court that the core samples CSI had drilled on the property to check soil conditions before bidding on the project did not constitute an improvement under our lien statutes. The judgment is affirmed.

FACTS
¶ 2 CSI is a major contractor on projects throughout the western United States. It was approached in the spring of 2007 by Western Development Partners, LLC (WDP) about expanding a mall in Walla Walla. WDP had the right to purchase the mall from the owner, Meyer Equities, LLC (Meyer). WDP was looking into tearing down part of the existing mall and expanding the mall with new construction.
¶ 3 WDP was working with CLC Associates, Inc. (CLC), an architectural firm that had also worked with CSI on other projects. CSI sent employees to the site and prepared budget numbers for redevelopment at the request of WDP. An engineering report suggested that the property might have groundwater at shallow depths. The presence of water at those levels would seriously impact CSI's proposals.
¶ 4 In consultation with WDP and CLC, CSI decided to have test pits dug on the property to determine the depth of the groundwater. CSI had a subcontractor dig the test pits on August 7, 2007. They were filled in the following day. CSI did not submit a bill for this work, but did maintain that the work was included as preconstruction costs in its later contracts with WDP.
¶ 5 Later that month, WDP began talks to sell its development opportunity to a local development company, Blue Mountain Plaza, LLC (BMP), and requested CSI assist it. CSI was concerned that it would not be paid for its work to that point if another entity took over the project. WDP assured CSI that it would encourage a new owner to use CSI. CSI helped WDP market the project to BMP. It also worked with CLC to obtain permits for storm water management of the mall property.
¶ 6 BMP purchased WDP's right to purchase the mall from Meyer. BMP and CSI entered into four contracts for work on the mall. The first contract, for site construction, was entered on November 15, 2007. Contracts for specific stores were entered into in April and May 2008.
¶ 7 Equity Funding, LLC (Equity) lent BMP $10,500,000 to purchase the mall. The sale between Meyer and BMP closed February 7, 2008. Equity's deed of trust was filed the next day; WDP filed a second deed of trust February 11, 2008. Prior to the sale, Meyer had refused to allow CSI access to the mall site in order to begin construction.
¶ 8 CSI began work on the mall. BMP failed to make regular payments toward construction costs, but assured CSI that financing was imminent. The financing, however, never materialized. CSI filed liens and amended liens in June, July, and August 2008. All of these liens reflected a work starting date of February 28, 2008.
¶ 9 BMP failed to pay WDP under a promissory note secured by the deed of trust. WDP began a nonjudicial foreclosure and sent notice of the trustee's sale to all parties with an interest in the project, including CSI. CSI suspended work on the mall on December 3, 2008. One week later it amended its liens to reflect a work start date of August 7, 2007.
¶ 10 CSI filed a complaint to foreclose on its liens on January 22, 2009. It did not take any action to stay the trustee's sale. WDP sold and assigned its rights to Walla Walla Holdings I, LLC (WWH), which then purchased the mall as the high bidder at the trustee's sale. WDP, WWH, and Equity all then moved for summary judgment to quiet title to the mall. CSI moved for cross summary judgment seeking to establish its liens as having a higher priority than the deeds of trust.
*838 ¶ 11 Two days before the hearing, CSI filed an "Omnibus Final Pleading." Equity successfully moved at argument to strike the document as untimely. The trial court denied CSI's motion for summary judgment and granted the competing motions from WDP, WWH, and Equity. The order also authorized an immediate appeal. CSI then appealed to this court.[1]

ANALYSIS
¶ 12 The primary issue in this appeal concerns the summary judgment rulings. WDP also seeks attorney fees. Preliminarily, CSI also challenges the decision to strike its final omnibus pleading. We will address that argument first.

Omnibus Pleading
¶ 13 CSI argues that the trial court should not have stricken its belatedly filed "Omnibus Final Pleading," contending that excusable neglect justified the late filing. The trial court did not abuse its discretion in striking the document.
¶ 14 Trial courts have discretion whether to accept untimely filed documents. O'Neill v. Farmers Ins. Co., 124 Wash.App. 516, 521, 125 P.3d 134 (2004). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 15 The documents supporting a motion for summary judgment must be filed 28 calendar days before the hearing on the motion. CR 56(c). Responsive documents are due 11 calendar days before the hearing, and reply documents must be filed no later than 5 days prior to the hearing. Id. Courts have authority to enlarge time deadlines when the request is made before the period has expired. CR 6(b)(1). However, once a deadline has passed, courts can accept late filings only if a motion is filed explaining why the failure to act constituted excusable neglect. CR 6(b)(2); Davies v. Holy Family Hosp., 144 Wash.App. 483, 500, 183 P.3d 283 (2008).
¶ 16 CSI argues that it established excusable neglect for the belated filing. Without deciding the merits of that claim, we note that the record does not show that any motion to establish excusable neglect was ever filed with the trial court. It is impossible for a trial court to abuse discretion it was never called upon to exercise. Accordingly, CSI has not established that the court abused its discretion in striking the late pleading.
¶ 17 The trial court did not err in striking the "Omnibus Final Pleading."

Summary JudgmentLien Priority
¶ 18 The primary focus of this appeal is the trial court's summary judgment rulings which were effectively based on determination that CSI's liens were junior to the Equity and WWH deeds of trust. The determination turns on whether or not CSI obtained a lien before the deeds of trust. We agree that CSI's construction liens did not predate the two deeds of trust.
¶ 19 This court reviews a summary judgment de novo, performing the same inquiry as the trial court. Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000). The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the nonmoving party. Id. If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. Id.
¶ 20 The moving party bears the initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). If a defendant makes that initial showing, then the burden shifts to the plaintiff to establish there is a genuine issue for the trier of fact. Id. at 225-226, 770 P.2d 182. "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wash.2d 780, 789, 108 P.3d 1220 (2005). While questions of fact typically are left to the trial *839 process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion" from the facts. Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985). A party may not rely on speculation or having its own affidavits accepted at face value. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. Id.
¶ 21 Washington's construction lien statute, RCW 60.04.021, provides:
Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.
Because the lien statute is in derogation of the common law, it is "strictly construed." Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc., 115 Wash.App. 384, 390, 62 P.3d 548 (2003). Written notice of the lien must be given to the property owner. RCW 60.04.031. Liens must be filed within 90 days of the final provision of materials or services. RCW 60.04.091.
¶ 22 The pivotal question involves the test drilling performed August 7, 2007, which is the earliest date CSI claims to have provided services subject to the lien statute. The respondents contend the drilling failed to satisfy several different requirements of the lien statute. CSI argues that all requirements of the statute were met.
¶ 23 As relevant here, the statute requires four distinct elements for a valid claim: (1) furnishing services or equipment (2) for improvement of real property (3) at contract prices (4) at the behest of the owner or owner's agent. The respondents raise numerous arguments asserting why CSI's lien efforts fail, including claims that other provisions of chapter 60.04 RCW were not satisfied. We need not address all of these arguments because we agree that there were at least three significant defects in complying with subsection .021.
¶ 24 Assuming that the test drilling did constitute professional services, it failed the remaining requirements of the statute. The test holes did not constitute an "improvement" of the land. That phrase is defined as
(a) Constructing, altering, repairing, remodeling, demolishing, clearing, grading, or filling in, of, to, or upon any real property or street or road in front of or adjoining the same; (b) planting of trees, vines, shrubs, plants, hedges, or lawns, or providing other landscaping materials on any real property; and (c) providing professional services upon real property or in preparation for or in conjunction with the intended activities in (a) or (b) of this subsection.
RCW 60.04.011(5).
¶ 25 "The activities described in subsections (a) and (b) strongly suggest that the resulting improvements will be permanently affixed to or part of the realty." Haselwood v. Bremerton Ice Arena, Inc., 137 Wash.App. 872, 886, 155 P.3d 952 (2007), aff'd, 166 Wash.2d 489, 210 P.3d 308 (2009). Previous cases bear out that interpretation. Minor preparatory activities do not amount to "improvement" of realty. E.g., McAndrews Group, Ltd., Inc. v. Ehmke, 121 Wash. App. 759, 90 P.3d 1123 (2004) (placement of surveying stakes and other markers); TPST Soil Recyclers of Wash., Inc. v. W.F. Anderson Constr., Inc., 91 Wash.App. 297, 957 P.2d 265, 967 P.2d 1266 (1998) (removal of contaminated soil from realty). Performing development services such as acquiring permits also does not amount to either "labor" or "improvement" under the lien statutes. Pac. Indus., Inc. v. Singh, 120 Wash.App. 1, 86 P.3d 778 (2003).
¶ 26 The test holes dug here did not amount to preparatory work for improving the property. The holes provided intelligence about the water level, which undoubtedly shaped the subsequent plans and bids. However, that information was not itself an improvement upon the realty just as the removal of contaminated soil in TPST did not constitute an improvement. Strictly construing this statute, as we must, we agree with the trial court that the hole drilling did not *840 constitute an improvement to the property.[2] The testing had utility for future construction, but was not done for that immediate purpose.
¶ 27 The lien also fails the "contract" requirement of RCW 60.04.021. The statute provides that the lien shall be "for the contract price" of the professional services. Respondents contend that this language implies that a contract for the professional service must be in place, while CSI argues that a contract is not required. The parties have not provided any case authority construing this language.
¶ 28 The purpose of statutory construction is to give effect to the meaning of legislation. Roberts v. Johnson, 137 Wash.2d 84, 91, 969 P.2d 446 (1999). Statutes that are clear and unambiguous do not need interpretation. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
¶ 29 With these principles of construction in mind, we agree with the respondents that a contract is essential to claiming a lien. Any other construction reads the words "contract price" out of the statute in derogation of the duty to render no part meaningless. Id. It also is consistent with the duty to "strictly construe" the statute to require that labor and services be provided pursuant to contract.
¶ 30 CSI had no contract when it performed the hole drilling. Indeed, it had the holes drilled in order to help it decide how to bid for the contract it hoped to obtain. The absence of a contract for the drilling precluded a lien claim for that effort. Any other construction would leave property owners subject to multiple liens from failed bidders who performed tests or other services to facilitate the bidding decision. For this reason, too, CSI's lien claim fails.
¶ 31 The lien claim also fails the fourth requirement of subsection .021, which states that the improvement services must be furnished at the request of the owner or the owner's agent or contractor.[3] The holes were dug with the knowledge, and arguably at the request, of WDP. However, Meyer owned the property. WDP was not serving as the agent or contractor of Meyer. Rather, it was a potential suitor for Meyer's property. BMP was not even in the picture yet.
¶ 32 CSI argues that WDP was an "equitable owner" because it possessed the right to purchase the property. The statute does not address potential owners. Instead, it lists owners and those working at the behest of the owner to improve the property. Construing the statute strictly, as we must, there is no basis for expanding the term "owner" to include those who someday hope to own the property. It is not hard to imagine that there could be competing putative owners, let alone competing liens from those who performed services for failed bidders. Clouding the title with liens from those working at the behest of others who hoped to acquire the property would simply lead to confusion and an understandable reluctance of financiers to become involved in developments.
¶ 33 Meyer was the owner at the time of the test drilling. Meyer consistently refused to let CSI (or anyone else) work on the property until a sale had been consummated and closed. While Meyer owned the property, no one had permission to make improvements to the land. Thus, no liens could be asserted prior to the time BMP became owner.
¶ 34 For all three reasons, CSI's liens could not attach before actual work site work *841 began in February 2008.[4] The efforts to back the lien up to the soil testing in August 2007 were properly rejected. The trial court correctly determined that the deeds of trust had first priority over the CSI construction liens.
¶ 35 Because summary judgment was properly granted on this issue, we need not address the other arguments made in challenge or support of the trial court's judgment.

Summary JudgmentDeed of Trust Sale
¶ 36 CSI also contends that the trial court erred when it granted summary judgment to WDP and WWH because there were procedural defects in the trustee's sale. The specific errors alleged are that the deed was wrongly dated, the record did not establish that WWH paid enough, and that WWH did not establish it was a successor in interest to WDP. This collateral challenge to the deed of trust foreclosure was waived.
¶ 37 The short answer to this challenge is that CSI made no effort to stop the trustee's sale before the fact, nor did it act to set the sale aside once the alleged defects became known. Absent prejudice from the error, a challenge arising from a presale defect is waived if the party does not seek to enjoin the sale. CHD, Inc. v. Boyles, 138 Wash.App. 131, 157 P.3d 415 (2007), review denied, 162 Wash.2d 1022, 178 P.3d 1033 (2008); Koegel v. Prudential Mut. Sav. Bank, 51 Wash.App. 108, 752 P.2d 385, review denied, 111 Wash.2d 1004, 1988 WL 631948 (1988). The same standard applies to defects occurring at or after the time of the saleabsent actual prejudice from the error, a claim is waived if no action is taken to set aside the sale. Steward v. Good, 51 Wash. App. 509, 754 P.2d 150, review denied, 111 Wash.2d 1004 (1988). Post sale challenges of a nonjudicial foreclosure sale are permitted. Cox v. Helenius, 103 Wash.2d 383, 693 P.2d 683 (1985). However, a party cannot collaterally challenge a trustee's sale. In re Marriage of Kaseburg, 126 Wash.App. 546, 108 P.3d 1278 (2005).
¶ 38 The procedural history of CHD is instructive here. There the holder of a promissory note secured by a deed of trust asked the trustee to foreclose for lack of payment. The debtor did not seek to enjoin the foreclosure sale, but instead filed an action to extinguish the debt on the basis that the statute of limitations had run. 138 Wash. App. at 134, 157 P.3d 415. This court held that failure to seek to enjoin the trustee's sale waived the statute of limitations defense. Id. at 136-139, 157 P.3d 415.
¶ 39 CSI is in a similar situation to the defendant in CHD. CSI believed its liens were superior to the deeds of trust, but did not take action to forestall the trustee's sale. Instead, it proceeded with its own action to foreclose its liens. Even after the alleged defects in the sale were discovered, it took no action to set aside the sale. Instead, the parties litigated CSI's actions at summary judgment. We believe that under these circumstances, any challenge to the circumstances of the trustee's sale was waived. CHD, 138 Wash.App. 131, 157 P.3d 415.
¶ 40 The trial court correctly denied CSI's claims concerning the trustee's sale.

Attorney Fees
¶ 41 WDP asks for reasonable attorney fees for both trial court and appellate activity. There is no basis in the record for awarding fees; we deny that request. RAP 18.1(a).
¶ 42 As prevailing parties, the respondents are entitled to their costs and fees. RAP 14.2, 14.3.
¶ 43 The judgment is affirmed.
WE CONCUR: BROWN and SIDDOWAY, JJ.
NOTES
[1] Defendant, TMC, Inc., also appealed. It filed a statement adopting CSI's brief, RAP 10.1(g)(2), but did not otherwise participate in this appeal. Equity has asked us to dismiss TMC's appeal. We deny the request.
[2] This conclusion then brings into play RCW 60.04.031(5) governing professional services that do not improve land. In light of our determination that the liens also fail other requirements of subsection .021, we will not discuss .031 other than to note that it is not helpful to CSI because it requires written notice of the services be made within 60 days of the activity for which payment is sought. RCW 60.04.031(1). The liens filed here came after the deeds of trust and well after the test drilling. Subsection .031 does not provide CSI any relief.
[3] Somewhat similar is a case decided under the former lien statute, W.T. Watts, Inc. v. Sherrer, 89 Wash.2d 245, 571 P.2d 203 (1977), where improvements to property made at the request of the possessor under a sheriff's sale did not attach to the property and were not liens enforceable against the ultimate redeemer of the property.
[4] It is for the additional reasons that the services were not provided by contract for the property owner that we do not believe RCW 60.04.031(5) has application. RCW 60.04.021 defines what actions give rise to a lien; RCW 60.04.031(5) simply provides a mechanism for establishing an "improvement" consisting of certain otherwise unobservable actions. It does not create an additional type of lien that can arise by working with someone other than the owner or owner's agent.