IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ZARAH-MARIE NEME and SAMUEL M. MAGURA, a married couple, | ) ) ) | No. 38252-4-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio insurance corporation, | ) ) ) ) ) | |
| Respondent. | ) | |

PENNELL, J. —Zarah-Marie Neme and Samuel Magura appeal the summary judgment dismissal of their claims against Progressive Direct Insurance Company. We affirm.

FACTS

In 2019, Samuel Magura obtained an automobile insurance policy from Progressive. The policy period ran from May 23, 2019, to November 23, 2019. The policy's declarations page listed Mr. Magura as the named insured and a 2016 Subaru Legacy as the covered auto. Prior to September 19, 2019, Mr. Magura's wife, Zarah-Marie Neme,[1] was listed as a driver on the policy but, as she had been living outside the

_____

[1] For ease of reference and readability, we will refer to Mr. Magura and Ms. Neme collectively as "the Appellants."

country, she was not a named insured.

The policy provided that Progressive would pay damages for any bodily injury or property damage for which an insured person was found to be legally responsible. The policy also provided that Progressive would settle or defend any claim for damages. However, the policy excluded from coverage "bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by [the insured] . . . other than a covered auto." Clerk's Papers (CP) at 82. The policy defined a "covered auto" to include an auto shown on the policy declarations page and "any additional auto." *Id*. at 78. An "additional auto" was defined as

> an auto you become the owner of during the policy period that does not permanently replace an auto shown on the declarations page if:
>      a.   we insure all other autos you own;
>      b.   the additional auto is not covered by any other insurance policy;
>      c.   you notify us within 30 days of becoming the owner of the additional auto; and
>      d.   you pay any additional premium due.
> An additional auto will have the broadest coverage we provide for any auto shown on the declarations page. If you ask us to insure an additional auto more than 30 days after you become the owner, any coverage we provide will begin at the time you request coverage.

*Id*. To provide an insurance quote for an additional auto, Progressive needed the year, make, and model of the vehicle, as well as its trim package. To actually provide coverage, Progressive also needed the vehicle's vehicle identification number (VIN), the coverage

and deductibles the insured desired for the vehicle, the name of the lienholder, if any, and

the exact date that the insured wanted the vehicle to be added to the auto policy.

On September 19, 2019, Mr. Magura called a Progressive customer service agent

and had the following conversation:

| | |
|---|---|
| [AGENT]: | Thank you for calling Progressive. This is [name redacted] speaking. How can I help you today? |
| [MR. MAGURA]: | Hi, I just need to add my wife to my auto policy. She needs to get a car, so. |
| [AGENT]: | Gotcha. |
| [MR. MAGURA]: | [inaudible]. |
| [AGENT]: | OK. Yeah, we can certainly do that. Um, what I'll do then is ask a few questions. I can pull up the policy. We'll go ahead and make sure she is added and then if we have any other questions, we can address those as well. OK. |
| [MR. MAGURA]: | Perfect. Thank you. . . . . |
| [AGENT]: | All right. So, taking a look here, so I do show I have a spouse listed for you . . . Neme. OK. All right. So, I do show that she is listed as a driver. Just right now she's listed as out of the country. So, she's gonna be in the country now driving a vehicle? |
| [MR. MAGURA]: | Correct. . . . . . . . |

| | |
|---|---|
| [AGENT]: | OK. All right. So, I'll go ahead and process this change, add her on here. Um, again, uh, since your policy is paid in full, uh, this payment's not due till October 23rd. So, you have a bit of time. We can take care of it today if you'd like or you can go on the website or the app. But otherwise we'll send out a bill. Um, but she is added on and insured. So, she is all, all set to go as of today. |
| [MR. MAGURA]: | Awesome. If we could just, uh, take care of it now. Do you have a card on file or do you need me to provide that information? <br> . . . . |
| [AGENT:] | . . . Um, can I just have you verify her driver's license number if you have that handy? <br> . . . . |
| [MR. MAGURA]: | OK. The number is [redacted). |
| [AGENT]: | Perfect. And that's Washington as well? |
| [MR. MAGURA]: | That's Illinois. |
| [AGENT]: | Oh, that could be why. Let's switch that around to Illinois. |
| [MR. MAGURA]: | So, now we're, we're going to purchase a vehicle in Washington . . . |
| [AGENT]: | OK. |
| [MR. MAGURA]: | . . . I don't know if that makes a big difference. But both of our driver licenses are from Illinois. <br> . . . . |

4

| | |
|---|---|
| [AGENT:] | . . . Perfect. All right. So, with that we'll just authorize the payment. . . . Um, and everything here looks good and has processed, so we are good back up to paid in full through November 23rd for you. OK. |
| [MR. MAGURA]: | 'K. 'K. Cool. |
| [AGENT]: | All right. So, that is all set. She's added on, uh, insured [sounds like]. We talked about that. Um, do you have any other questions?<br>. . . . |
| [MR. MAGURA]: | Um, if I could just get proof of insurance for Zairah sent to my email. Could, is that possible? |
| [AGENT]: | Um, so I can send, I mean, you're gonna get email confirmations of the changes, um, if you go on our website, you'll be able to access the updated ID cards and declarations page . . . |
| [MR. MAGURA]: | OK.<br>. . . I'll just go to the website. That's fine . . .<br><br>. . . . |
| [AGENT:] | All right. Any other questions? |
| [MR. MAGURA]: | Um, that's it. |

*Id*. at 37-41. At no point during the conversation did Mr. Magura provide any specific information about a new vehicle he had purchased, or intended to purchase. After the phone call, the updated declarations page on Progressive's website showed an increased premium of $93.53 with the 2016 Legacy as the only covered auto.

5

On September 20, the Appellants purchased a 2019 Subaru Impreza. Among the documents they signed relating to the purchase of the 2019 Impreza was an insurance coverage acknowledgement wherein they listed Progressive as their insurer. In the acknowledgement, they affirmed their obligation to insure the vehicle, and provided the dealership permission to contact Progressive to verify their insurance.

On October 22, Ms. Neme was involved in a motor vehicle accident while driving the 2019 Impreza. Following the accident, Mr. Magura called Progressive to file a claim. The customer service agent who received the call informed Mr. Magura the 2019 Impreza was not listed on the policy as a covered auto. Progressive later sent the Appellants a letter denying coverage for the claim, as the 2019 Impreza was not covered under the policy. The Appellants later described the 2019 Impreza as a total loss, although they were required to continue to make payments on the vehicle. The following year, the Appellants were sued by the other party to the accident for damages arising out of the collision. Based on the previous denial of coverage, Progressive did not defend the Appellants in this suit. The Appellants thereafter retained independent defense counsel.

The Appellants then filed suit against Progressive, raising four causes of action: (1) breach of contract, (2) equitable estoppel, (3) violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and (4) violation of the Insurance Fair Conduct Act

No. 38252-4-III
*Neme v. Progressive Direct Ins. Co.*

(IFCA), RCW 48.30.010-.015. The parties filed cross motions for summary judgment and the trial court entered judgment in favor of Progressive. Mr. Magura and Ms. Neme now timely appeal.

ANALYSIS

The Appellants' claims against Progressive all turn on whether the 2019 Subaru Impreza was a covered vehicle under Progressive's policy, either by virtue of the terms of the policy or through Progressive's specific assurances. Our review is de novo. *Colo. Structures, Inc. v. Blue Mountain Plaza, LLC,* 159 Wn. App. 654, 661, 246 P.3d 835 (2011) (summary judgment reviewed de novo); *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005) (contract interpretation reviewed de novo).

1. *Was the 2019 Subara Impreza a covered vehicle under the terms of the policy?*

The first question raised on appeal is whether the 2019 Subaru Impreza was a covered vehicle under the terms of Progressive's written policy. The policy defines a "covered auto" not only as those automobiles named on the policy declarations page, but also an "additional auto" during an initial 30-day window of the policyholder gaining ownership.

There is no evidence the 2019 Impreza was a covered auto under the terms of Progressive's policy. The 2019 Impreza was not named in the policy as a covered auto.

7

Nor did the Impreza qualify as an additional auto, given more than 30 days had elapsed since the Appellants became owners of the Impreza.

Mr. Magura argues that, given the September 19 phone call, the 2019 Impreza should have been considered as covered under the policy. We disagree. The September 19 call was placed before the Impreza's purchase date. Nothing in the call could have relayed information Progressive needed to add an additional vehicle to the policy, such as VIN number, make, model, or trim package.

Contrary to the Appellants' arguments on appeal, the September 19 phone call cannot be fairly interpreted as a request to add a vehicle to the policy. The only substantive request made by Mr. Magura during the call was to add his wife as a named insured to the policy. *See* CP at 37 ("I just need to add my wife to my auto policy."). The content of the remainder of the call was consistent with this purpose. While Mr. Magura mentioned during the call that he and his wife were "going to purchase a vehicle," *id*. at 39, he did not provide any specifics on when they would be getting a new vehicle or what type of vehicle it would be.

This case is not like *Rowland v. State Farm Insurance Company*, 9 Wn. App. 460, 512 P.2d 1129 (1973). In *Rowland*, the insured purchased a vehicle, experienced a collision, and then notified the insurer of the collision and the purchase all within the

30-day window to add the vehicle to the policy. *Id*. at 462. Here, the Appellants did not notify their insurer of their purchase of a new vehicle within the 30-day window. *Rowland* is inapposite and fails to support the Appellants' coverage claim.

Because the Impreza was not a covered auto, the Appellants cannot sustain their claim for breach of contract.

2.     *Did Progressive say or do something to suggest the 2019 Subaru Impreza was a covered vehicle?*

Progressive did not say or do anything that reasonably could have caused the Appellants to believe the 2019 Impreza was a covered vehicle under the terms of the policy. The September 19 phone call between Mr. Magura and the Progressive agent was limited to the issue of adding Ms. Neme to the policy as an insured driver. Progressive quoted an increased premium to Mr. Magura, but that was based on the addition of Ms. Neme to the policy. The subsequently-issued declarations page listed both Mr. Magura and Ms. Neme as named insureds, but the only covered vehicle listed was the 2016 Subaru Legacy.

Nothing said or done by Progressive could have reasonably led the Appellants to believe Progressive had agreed to cover the 2019 Subaru Impreza, the identity of which had never been disclosed to Progressive. Thus, the Appellants have not alleged facts sufficient to support a claim against Progressive's denial of coverage based on a theory

No. 38252-4-III
*Neme v. Progressive Direct Ins. Co.*

of estoppel or related theories regarding violations of the CPA or IFCA. *See Overton v. Sonsol. Ins. Co.*, 145 Wn.2d 417, 434, 38 P.3d 322 (2002) (no CPA claim based on reasonable denial of coverage); *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 683, 389 P.3d 476 (2017) (same as to claim under the IFCA).

CONCLUSION

The trial court's summary judgment order is affirmed. The Appellants' request for attorney fees is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

10