
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NIPR, LLC., a Washington limited liability company, | ) ) ) | No. 38501-9-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| INDUSTRIAL CONTROL CONCEPTS, INC., d/b/a ICC, INC. a Missouri corporation, ICC NORTHWEST INC, an Oregon corporation, dba/aka ICC ENGINEERING LLC, a Missouri limited liability company, dba/aka ICC TURNKEY, INC., a Missouri corporation, dba/aka ICC HAWAII INDUSTRIAL STRUCTURES, INC., a Hawaii corporation, WYCKOFF FARMS, INC., a Washington corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a domestic/foreign insurer; and ATLANTIC SPECIALTY INSURANCE COMPANY, a domestic/foreign insurer; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Appellant. | ) | |

STAAB, J. — Wyckoff Farms, Inc., hired Industrial Control Concepts, Inc. ("ICC")

for a large construction project. In turn, ICC hired NIPR, LLC, as a subcontractor for the

piping work on the project. Relations between Wyckoff Farms and ICC broke down

when Wyckoff Farms discovered ICC's failure to pay some of its contractors, including

NIPR. ICC and NIPR subsequently discontinued work on the project.

NIPR filed a construction lien against the Wyckoff Farms property and then filed

suit against Wyckoff Farms and ICC for unjust enrichment and foreclosure of its lien

claim. In its answer, Wyckoff admitted there was a contract between ICC and NIPR,

denied liability, and asserted numerous affirmative defenses. NIPR eventually moved for

summary judgment against Wyckoff Farms, alleging that it was entitled to judgment on

its lien claim. In its response, Wyckoff Farms argued that summary judgment was

premature and improper because there were several issues of material fact, and NIPR's

motion failed to address Wyckoff's affirmative defenses. The superior court denied

Wyckoff's motion for a CR 56(f) continuance and granted NIPR's summary judgment,

issuing an order foreclosing on NIPR's lien claim.

On appeal, Wyckoff Farms claims that summary judgment was improper because

NIPR failed to produce evidence to prove the elements of a lien claim and failed to

address Wyckoff's affirmative defenses. We hold that the trial court did not abuse its

discretion in denying a continuance for NIPR's lien foreclosure claim, and Wyckoff

Farms failed to create a genuine issue of material fact as to elements of NIPR's lien

claim. However, because the motion on summary judgment failed to include or address

Wyckoff's affirmative defenses, those defenses survived summary judgment to the extent

that NIPR's motion did not decide them. Consequently, it was error for the trial court to issue a judgment foreclosing on NIPR's lien claim.

BACKGROUND

Because this issue was decided in favor of NIPR on summary judgment, the following facts are set forth in a light most favorable to Wyckoff Farms.

1.    BACKGROUND

Wyckoff Farms hired ICC to help complete an extraction facility on Wyckoff Farms' property in Prosser, Washington (the Property) pursuant to multiple contracts (the Project). Under one of the contracts, Wyckoff Farms agreed to pay ICC for piping work on the facility on a time and materials basis. ICC hired NIPR, a subcontractor run by husband and wife Alan Lichtenfels and Danielle Dukart, to supply labor, materials, and equipment to complete the piping work.

NIPR began work on the project in October 2019. Five months later, after ICC failed to pay NIPR's invoices, NIPR threatened to leave the job. To keep NIPR on the job, Wyckoff Farms made a direct payment of $113,000.00 to NIPR. Thereafter, the relationship between Wyckoff Farms and ICC became increasingly strained. Ultimately, ICC discontinued all work on the Project, as did NIPR.

In March 2020, NIPR claimed an outstanding balance of $235,045.02. In May, NIPR filed a construction lien against the Property, asserting that it had ceased work on the project on or about April 5, and claimed an unpaid principal balance of $314,792.15.

In June, NIPR recorded an amended claim of lien against the Property with the Benton County Auditor. Shortly thereafter, Wyckoff Farms posted a release of lien bond with the auditor.

2.      JUDICIAL PROCEEDINGS

In October 2020, NIPR filed a complaint against Wyckoff Farms in Benton County Superior Court, raising unjust enrichment and its lien claim. Wyckoff Farms answered NIPR's complaint, admitted the contract between NIPR and ICC, denied liability, and raised numerous affirmative defenses, including fraud, estoppel, offset, and waiver.

Nine months later, on July 7, 2021, Wyckoff Farms hired new counsel. On August 13, NIPR filed a motion for summary judgment against Wyckoff Farms, arguing that it was entitled to foreclosure of its lien. In support of its motion, NIPR provided evidence that ICC hired NIPR as a subcontractor to supply labor, materials, and equipment to improve the Property. NIPR also provided photographs of some of the work that NIPR performed, invoices that had yet to be paid by ICC, and a spreadsheet showing the total interest owed to NIPR on the outstanding balance.

NIPR's attorney filed a declaration in support of the motion, attaching numerous exhibits, including the claim of lien filed by NIPR, the complaint filed by NIPR, and discovery responses NIPR received from Wyckoff Farms. A subpoena issued by

Wyckoff Farms to NIPR on February 1, 2020, was also attached.[1]  The declaration

indicated that all of NIPR's invoices had been turned over to Wyckoff Farms as a part of

NIPR's compliance with the subpoena.

Wyckoff Farms responded, arguing that NIPR failed to prove the existence of a

contract or "contract price" as between ICC and NIPR pursuant to RCW 60.04.021 and

RCW 60.04.011(2), respectively.  Wyckoff Farms further argued that summary judgment

was precluded because Wyckoff Farms' affirmative defenses were not addressed in

NIPR's opening motion.

In support of its response to NIPR's summary judgment, Wyckoff Farms filed

multiple declarations.  The President and CEO of ICC, Alex Alexandrov, provided a

declaration, but all of his assertions were prefaced with the phrase, "it is my

understanding."  *See* Clerk's Papers (CP) at 295-96.  His declaration stated, in part, that it

was his understanding that NIPR had done work outside of the scope agreed to with ICC

and that NIPR was not entitled to payment for that work.

Wyckoff Farms presented the declaration of Patricia Westmoreland whom

Wyckoff Farms hired to audit ICC's management of the Project as well as ICC's

---

[1] It appears from the record that Wyckoff Farms conducted little to no discovery in this action.  The subpoena duces tecum described here was issued to NIPR as a part of a pending federal court action between Wyckoff Farms and ICC (Cause No. 4:20-cv-05095-TOR) related to the same project.

subcontractors' invoices, timecards, and backup. Westmoreland declared that she had found irregularities in NIPR and ICC's billing practices. She did not testify to any specific irregularities or provide details aside from one example that NIPR easily explained. No exhibits were attached to her declaration.

Dave Wyckoff, CEO of Wyckoff Farms, submitted a declaration in which he reiterated the background giving rise to the current dispute. Mr. Wyckoff also declared that "Wyckoff Farms ha[d] not been benefitted in an amount equal to costs of the Piping Work" done by NIPR and subsequently finished by Apollo Sheet Metal after NIPR quit working on the Project. CP at 305-07. Finally, Mr. Wyckoff declared that Wyckoff Farms discovered irregularities in NIPR and ICC's billing practices but did not provide any specifics or details. Wyckoff attached the piping contract between Wyckoff Farms and ICC as an exhibit. CP at 308, 311. No other exhibits were attached.

NIPR replied, arguing that there was a contract between NIPR and ICC. NIPR further contended that NIPR's billing records were accurate, that a continuance was not warranted, and that Wyckoff Farms had failed to support its affirmative defenses and NIPR was therefore not required to move for summary judgment. Additionally, NIPR argued that though the scope of work changed, NIPR only did work at ICC's direction.

To support its reply, NIPR provided Ms. Dukart's reply declaration that contained exhibits, including email exchanges between NIPR and ICC outlining their work

agreement, the changing scope of work to be done, and outstanding invoices from NIPR.

NIPR stated that these documents were also produced as a part of the February subpoena.

The superior court granted NIPR's motion for summary judgment, denied

Wyckoff Farms' motion for a continuance, and entered a final judgment against Wyckoff

Farms. The superior court also granted NIPR's motion for attorney fees and costs.

Wyckoff Farms appeals.

ANALYSIS

1.    WYCKOFF'S MOTION FOR A CR 56(f) CONTINUANCE

In response to NIPR's motion for summary judgment, Wyckoff Farms moved for

a CR 56(f) continuance to conduct additional discovery on NIPR's claim and its

affirmative defenses. The trial court denied this request and proceeded to address the

substantive issues. On appeal, Wyckoff Farms contends that denying its motion for a

continuance was an abuse of discretion.

We disagree. In doing so, we distinguish between the request to conduct

discovery on NIPR's claim and a request to conduct additional discovery on Wyckoff

Farms' affirmative defenses. First, as we discuss below, the affirmative defenses were

not before the court on summary judgment, so a CR 56(f) continuance to conduct

discovery on these defenses was unnecessary. *See Robbins v. Mason County Title Ins.*

*Co.*, 195 Wn.2d 618, 636-37, 462 P.3d 430 (2020) (insurer did not need to create a

genuine issue of material fact under CR 56(f)[2] for the affirmative defenses because

plaintiff had not moved for summary judgment on the defenses). As to the need for

additional discovery on NIPR's claim, we conclude that the record supports the trial

court's conclusion that there was no basis for a continuance.

We review a trial court's denial of a CR 56(f) motion for abuse of discretion.

*Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000). A court may order

a continuance where "it appear[s] from the affidavits of the [non-moving party] that, for

reasons stated, the party cannot present by affidavit facts essential to justify the party's

opposition." CR 56(f). The continuance may be granted "to permit affidavits to be

obtained or depositions to be taken or discovery to be had." *Id*. On the other hand, "'[a]

court may deny a motion for a continuance when (1) the requesting party does not offer a

good reason for the delay in obtaining the desired evidence; (2) the requesting party does

not state what evidence would be established through the additional discovery; or (3) the

desired evidence will not raise a genuine issue of material fact.'" *Pitzer*, 141 Wn.2d at

556 (internal quotation marks omitted) (quoting *Tellevik v. Real Property*, 120 Wn.2d 68,

90, 838 P.2d 111 (1992)).

Wyckoff Farms insists that *Coggle v. Snow*, 56 Wn. App. 499, 784 P.2d 554

(1990) and *Keck v. Collins*, 181 Wn. App. 67, 325 P.3d 306 (2014) are analogous to the

---

[2] Robbins discusses CR 56(e), which is now CR 56(f).

current case and therefore require a finding of abuse of discretion here. In both of these cases, the court of appeals found an abuse of discretion for denying a CR 56(f) continuance.

In *Coggle*, the trial court denied a CR 56(f) continuance where the non-moving party stated it needed more time to obtain a declaration to rebut the moving party's motion. 56 Wn. App. 502-03. New counsel for the non-moving party had substituted in, one week after filing the motion for summary judgment. *Id* at 508. On appeal, the court held that the proper standard is "whether discretion is exercised on untenable grounds or for untenable reasons, considering the purposes of the trial court's discretion." *Id.* at 507. In holding that the trial court improperly exercised its discretion in denying the motion for a continuance, the court reasoned that a brief continuance was warranted because counsel had just substituted in and because little discovery had been conducted previously. *Id.* at 507-08.

In *Keck*, the court held that the trial court's denial of the CR 56(f) continuance was improper. 181 Wn. App. at 89. The non-moving party submitted three responsive affidavits, one of which was late. *Id.* at 77. The non-moving party requested a continuance, noting that counsel for the non-moving party was representing a party in an unrelated jury trial during the two weeks before the hearing and when the response to the motion was due. *Id.* at 76. The superior court denied the motion to continue, refused to consider the late affidavit, and granted the motion for summary judgment. *Id.* at 77. On

appeal, the court held that the trial court abused its discretion by denying the continuance because counsel had a good reason for the late affidavit, justice required the continuance, and denial of the continuance was manifestly unreasonable. *Id.* at 88-89.

Here, Wyckoff Farms argued that a continuance was justified because it had been focusing on the federal litigation between Wyckoff and ICC, suggesting that "a number of issues relevant to this dispute are being litigated in a federal case." CP at 320. However, at the motion hearing before superior court, counsel for Wyckoff Farms confirmed that NIPR was not a party to the federal action and "[t]he issue between ICC and NIPR is here in this court." Report of Proceedings at 21. While Wyckoff Farms focused on the federal litigation, NIPR's claims grew stale.

Wyckoff Farms also states that, similar to *Coggle*, new counsel had recently substituted in and had multiple planned absences during the time their response was due. Wyckoff Farms failed to explain how this affected their ability to conduct discovery and respond to the motion. Wyckoff Farms retained new counsel one month before NIPR filed for summary judgment. The record reflects that counsel for Wyckoff was unavailable on August 24, 25, and 30. The response brief was due and filed on August 30, and the hearing was held on September 10. In *Coggle*, new counsel was brought in *after* filing the summary judgment motion. 56 Wn. App. at 508. In *Keck*, counsel was busy with an unrelated trial during the time that their response was due. 181 Wn. App. at 76.

In both *Coggle* and *Keck,* the parties were specific in outlining what evidence would be obtained if a continuance was granted. More time was needed to get responsive declarations from specific witnesses. 56 Wn. App. at 503-04; 181 Wn. App. at 77-78. Here, in contrast, Wyckoff Farms stated in general terms that it needed to conduct discovery on the contracts, if any, between ICC and NIPR, the work authorized and performed by NIPR, and the amounts paid, amounts due, or released by NIPR. Wyckoff Farms did not specify what evidence it would obtain if a continuance was granted.

Because Wyckoff Farms was unable to provide a good reason for the delay in conducting discovery, explain with specificity what evidence would be obtained through further discovery, or how the new evidence would create an issue of material fact, the trial court did not abuse its discretion when it denied Wyckoff Farms' motion for a continuance.

2.    NIPR'S LIEN CLAIM

Wyckoff Farms argues that summary judgment was improper because NIPR failed to set forth uncontroverted evidence to establish the elements of a lien claim under RCW 60.04.021.

Orders on summary judgment are reviewed de novo. *Keck*, 184 Wn.2d at 370. Evidence is considered in a light most favorable to the non-moving party. *Id*. Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

11

The moving party bears the initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If a party makes that initial showing, then the burden shifts to the non-moving party to establish there is a genuine issue for the trier of fact. *Id.* at 225-26. "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion" from the facts. *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

Further, a non-moving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, a non-moving party must put "forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id.*

NIPR contends that it has established its right to a lien claim under RCW 60.04.021, which states:

> Except as provided in RCW 60.04.031, any person furnishing labor, professional services, materials, or equipment for the improvement of real property shall have a lien upon the improvement for the contract price of labor, professional services, materials, or equipment furnished at the instance of the owner, or the agent or construction agent of the owner.

12

A lien claim filed under RCW 60.04.021 "requires four distinct elements for a valid claim: (1) furnishing services or equipment (2) for improvement of real property (3) at contract prices (4) at the behest of the owner or "owner's agent."" *Colorado Structures, Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 662, 246 P.3d 835 (2011). Since the statute is in derogation of the common law, it is "strictly construed." *Id.* (citing *Intermountain Elec., Inc. v. G–A–T Bros. Constr., Inc.*, 115 Wn. App. 384, 390, 62 P.3d 548 (2003)).

### Existence of a Contract and Contract Prices

Wyckoff Farms argues that NIPR failed to establish the existence of a contract between NIPR and ICC. The existence of a contract is essential to a lien claim. *Id.* at 664. In *Colorado Structures*, the court held that there was no contract where the plaintiff, a subcontractor, had drilled holes to test the groundwater depth as part of its bid preparation. *Id.* at 658, 664. The court reasoned that if a contract were not essential in claiming a lien, property owners would be subject to multiple liens from failed bidders who performed tests or other services to facilitate the bidding decision. *Id.* at 664.

Wyckoff does not dispute that NIPR furnished services or equipment to improve its real property, or that ICC was Wyckoff Farms' agent, or that both ICC and Wyckoff Farms paid NIPR for this work. In its answer to NIPR's amended complaint, Wyckoff Farms admitted to the existence of a contract between NIPR and ICC. Nevertheless, at summary judgment and again on appeal, Wyckoff Farms argues that NIPR failed to

present evidence of mutual assent to reasonable definite terms. We conclude that

Wyckoff Farms attempts to make the contract element more complicated than it is. After

reviewing the evidence, we agree that there is no issue of material fact regarding the

existence of a contract between NIPR and ICC and its terms.

To form a contract, there must be an objective manifestation of mutual assent.

*Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004). The

terms assented to need to be sufficiently definite. *Id.* at 178 (citing *Sandeman v. Sayres*,

50 Wn.2d 539, 541, 314 P.2d 428 (1957)). If a term is "so indefinite that a court cannot

decide just what it means," then there can be no contract. *Sandeman*, 50 Wn.2d at 541.

Here, NIPR showed the existence of a contract between ICC and NIPR. NIPR

correctly points out that in its answer, Wyckoff Farms admitted that NIPR contracted

with ICC to supply labor, materials, and equipment to improve the property. However, in

response to the motion for summary judgment, Wyckoff Farms took a contrary position,

asserting that it was unaware of any contract between NIPR and ICC but was aware that

NIPR and ICC had come "to some arrangement that NIPR would perform part of the

piping work" for the project. CP at 212.

Wyckoff Farms also claims that NIPR failed to show that the services and

materials were provided at contract prices. RCW 60.04.011(2) defines "contract price"

as "the amount agreed upon by the contracting parties, or if no amount is agreed upon,

then the customary and reasonable charge therefor." Wyckoff Farms claims that NIPR

failed to include critical documents in its summary judgment reply declaration to prove that Wyckoff Farms agreed to NIPRs listed rates or any particular terms of a contract between the two parties. Wyckoff Farms' argument fails.

Here, NIPR provided undisputed evidence of the contract prices. NIPR produced an email sent on November 1, 2019, from the senior project manager at ICC to NIPR, outlining terms previously discussed between ICC and NIPR. The email states that "NIPR will provide balance of all materials needed for the Wyckoff mechanical install at a 5% markup" and that "ICC will guarantee net 7 calendar day payment terms of NIPR invoices for the Wyckoff job." CP at 411. Attached to ICC's email was NIPR's rate sheet. This email from ICC is clear evidence of ICC's assent to a contract between NIPR and ICC, and the "contract price" being based on a time and materials basis, with ICC paying NIPRs invoices as they receive them. The terms are sufficiently definite and there is mutual assent, evidenced clearly by the email itself.

Further, this arrangement, by Wyckoff Farms' own admission, was adhered to for months until "ICC stopped paying [NIPR's] invoices." Br. of Appellant at 5. Wyckoff Farms' claim of ignorance on a necessary element does not raise an issue of fact in the face of NIPR's direct evidence of a contract. *See Seven Gables Corp.*, 106 Wn.2d at 12-13.

Given these facts, we agree with the trial court that there is no genuine issue of material fact that NIPR contracted with ICC to work on Wyckoff's property.

15

No. 38501-9-III
*NIPR, LLC v. Wyckoff Farms, Inc.*

*Out-of-Scope and Unauthorized Work*

Wyckoff Farms argues that even if there was a contract, there is a genuine issue of material fact as to whether some of the work performed by NIPR was "out-of-scope" and unauthorized by the owner's agent (ICC). Br. of Appellant at 25. NIPR disputes this claim and points to evidence showing that all work was performed according to the terms agreed upon between NIPR and ICC. NIPR produced an email sent on October 10, 2019, from ICC to the co-owner of NIPR that laid out the scope of the work to be done by NIPR. As expected, when dealing with a large construction project, the scope of work changed. A list of how and why the scope of work changed was attached as a part of exhibit C to the reply declaration of Ms. Dukart.[3]

Wyckoff Farms relies in part on the declaration of Alex Alexandrov, the president of ICC. Mr. Alexandrov's declaration is conclusory and does not appear to be based on first-hand knowledge. While Mr. Alexandrov testified that he had "personal knowledge and information regarding the various agreements that Wyckoff Farms executed with the ICC Group, and separately with Plaintiff NIPR, LLC ("NIPR"), relating to the Extraction

---

[3] On appeal, Wyckoff Farms suggests that since this evidence was produced with NIPR's reply brief, the trial court should have struck the evidence. However, Wyckoff did not move to strike. In light of Wyckoff Farms' answer, admitting the existence of a contract, it is not surprising that NIPR did not include the evidence of a contract in its initial motion for summary judgment.

16

Facility," he does not claim to have personal knowledge about any agreements or contracts between ICC and NIPR. CP at 296.

Additionally, Mr. Alexandrov states, in a conclusory fashion and with the qualification of "it is my understanding," that NIPR performed work that was outside of the scope of the contract between NIPR and ICC, and that there were disputes between ICC and NIPR "about the reasonableness of the amounts billed." CP at 296. However, Mr. Alexandrov fails to identify any specific work that was performed outside the contract's scope, much less details on which amounts were disputed. Mr. Alexandrov's declaration, without more, does not create an issue of material fact because he has not put forth specific facts to rebut NIPR's contention that all work was done within the scope of the contract at ICC's direction. *Seven Gables Corp.,* 106 Wn.2d at 13 (a non-moving party may not rely on speculation or having its own affidavits accepted at face value).

Wyckoff Farms also contends that there is no evidence in the record that ICC approved the out-of-scope work billed by NIPR. Wyckoff Farms is incorrect. The emails and attachments presented as exhibits to the declaration of Ms. Dukart show that NIPR performed all out-of-scope work at the direction of ICC and that this work was necessary to complete the job.[4] Because any alleged out-of-scope work was completed

---

[4] The reply declaration of Ms. Dukart contains many exhibits (namely Exhibits D-K), mostly emails between NIPR and ICC, that show that NIPR was asked by ICC to perform work outside of the original scope of the Project.

"at the instance of the owner, or the owner's agent" as required by RCW 60.04.021 and *Colorado Structures*,[5] it is properly subject to the lien.

### *Final Amount Owed*

As a part of NIPR's motion for summary judgment, NIPR produced numerous invoices that represent the amount owed and the interest accrued. Prior to summary judgment, NIPR identified two of its own billing errors and contacted ICC and Wyckoff Farms to correct the errors. The total of the two billing errors identified by NIPR was $9,150.00. Wyckoff Farms contends that because NIPR previously identified billing errors related to the Project, there is an issue of material fact as to whether there are other unidentified billing errors. Wyckoff Farms does not cite any authority for this position.

To support its argument that there is an issue of material fact in regard to NIPR's billing practices, Wyckoff Farms relies on the declaration of Patricia Westmoreland. Ms. Westmoreland was hired by Wyckoff Farms in September 2020 to perform an audit of ICC's management of the project as well as ICC's subcontractors' invoices, timecards, and backup. In her declaration, she testified that her examination had uncovered numerous billing errors and irregularities with NIPR's billing practices and invoices. However, as NIPR points out, Westmoreland failed to provide any details supporting her claims and failed to produce evidence that the amount sought by NIPR was inaccurate.

---

[5] 159 Wn. App. at 662.

As stated above, Wyckoff Farms must put forth detailed evidence showing the existence of a triable issue. Westmoreland states in her declaration that NIPR's timecards billed unauthorized overtime on several occasions, NIPR billed travel expenses related to a completely different project, and NIPR submitted invoices that were unsupported by receipts. CP at 300. Though Westmoreland makes these general claims, she provides no details to show that the lien amount sought by NIPR is inaccurate, and there are no exhibits attached to her declaration showing the invoices at issue. The only specific example provided by Westmoreland was her claim that a Wayland receipt for $1,071.41 was missing from NIPR's invoice 489. CP at 300. However, this receipt was produced as part of NIPR's motion for summary judgment. CP at 83, 85.[6] Therefore, Westmoreland's declaration was inadequate to create an issue of material fact related to NIPR's billing practices.

The superior court did not err in finding that there were no questions of material fact and NIPR had proved all the elements of a lien claim under RCW 60.04.021. Nevertheless, as we set forth below, the court went too far in entering a judgment for lien foreclosure in favor of NIPR.

---

[6] The invoice is for $1,071.41 and the receipt is for $1,020.41. As previously noted, materials provided by NIPR were subject to a 5 percent markup ($1,020.41 x .05 = $51.00 + $1,020.41= **$1,071.41**).

3.      WYCKOFF'S AFFIRMATIVE DEFENSES SURVIVE SUMMARY JUDGMENT

Wyckoff Farms argues that NIPR's failure to move for summary judgment on Wyckoff Farms' affirmative defenses is fatal to NIPR's motion for summary judgment. While we disagree that failure to raise the affirmative defenses in summary judgment precludes the court from deciding the merits of NIPR's claims, it does preclude final judgment on those claims.

Our Supreme Court recently held in *Robbins* that a motion for summary judgment on liability that did not specifically address or attack the non-moving party's affirmative defenses did not extinguish them. 195 Wn.2d 618. Instead, the affirmative defenses needed to be addressed and considered by the trial court on remand. *Id.*

In *Robbins*, the plaintiff landowner alleged that the title company, Mason County Title Insurance Company (MCTI), had a duty to defend against a collateral claim on the property. MCTI moved for summary judgment claiming it had no duty to defend, and the landowner filed a cross-motion arguing that not only did MCTI have a duty to defend, but its failure to do so was in bad faith. The superior court found no duty to defend and granted MCTI's motion.

The Supreme Court reversed and found that MCTI had a duty to defend, and its failure to do so constituted bad faith. *Id*. at 635. The court held that MCTI's bad faith estopped the insurer from denying coverage to the landowner unless an affirmative defense applied. *Id*. Since the landowner did not include MCTI's affirmative defenses in

20

its motion, the defenses were not decided on summary judgment. *Id*. at 637. After concluding that MCTI had a duty to defend, the court remanded for the superior court to decide the affirmative defenses. *Id*.

While Wyckoff Farms misreads *Robbins* as providing a total defense to summary judgment, NIPR also fails to appreciate the impact of *Robbins*. NIPR claims that Wyckoff Farms should be precluded from raising its affirmative defenses because Wyckoff failed to raise them on summary judgment. NIPR continues that Wyckoff Farms' affirmative defenses are standard defenses without any specific allegations or evidence relating to NIPR's claim. NIPR fails to cite, much less distinguish the Supreme Court's decision in *Robbins*. If Wyckoff's affirmative defenses have no merit, then NIPR can raise that claim in summary judgment and give Wyckoff an opportunity to meet its burden of showing a genuine issue of material fact.

Notwithstanding our decision here, to the extent that any of Wyckoff Farms' affirmative defenses would have expressly negated an element of NIPR's claim, it should have been raised as a defense to the motion and would be precluded on remand. For example, Wyckoff Farms' claim that NIPR has failed to state a claim on which relief can be granted has been implicitly decided by the trial court's decision that NIPR has established the elements of a claim under RCW 60.04.021.

We affirm the superior court's decision concluding that NIPR has established all the elements of a valid lien claim under RCW 60.04.021. However, NIPR's claim is

21

subject to Wyckoff Farms' affirmative defenses, which were not decided on summary judgment. We reverse the superior court's order granting foreclosure and remand for consideration of Wyckoff Farms' affirmative defenses.

4.    ATTORNEY FEES

The trial court granted NIPR attorney fees as part of its order on summary judgment. Given our decision today, we reverse the superior court's order awarding NIPR its attorney fees.

We refrain from awarding fees on appeal because the case is still pending. RCW 60.04.181(3) authorizes the court to award the prevailing party its fees and costs, including attorney fees. In *Robbins*, the court declined to award reasonable attorney fees where the court remanded to the superior court for consideration of the defendant's affirmative defenses. 195 Wn.2d at 638. The court stated that the request was premature because the affirmative defenses had not yet been considered. *Id.* Further, in *Haselwood v. Bremerton Ice Arena, Inc.*, the court reversed an award of attorney fees under RCW 60.04.181(3) where the grant of summary judgment was reversed because the party had "not yet prevailed in the lien dispute." 137 Wn. App. 872, 891, 155 P.3d 952 (2007).

Similarly, here, we must remand to the superior court for consideration of Wyckoff Farms' affirmative defenses. Upon resolution of this case, the superior court can reconsider an appropriate award of fees and costs under RCW 60.04.181(3), including fees and costs for this appeal.

No. 38501-9-III
*NIPR, LLC v. Wyckoff Farms, Inc.*

We affirm the trial court's order on summary judgment finding as a matter of law that NIPR has established the elements of a lien claim under RCW 60.04.021. We reverse the order granting a judgment against Wyckoff Farms because Wyckoff Farms' affirmative defenses survived summary judgment and have not been decided. We likewise reverse the order granting attorney fees and remand for proceedings consistent with this decision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, C.J.

23